**Robert B. FOLGER, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. 5585.**

Court of Appeals of Alaska.

July 23, 1982.

Jane F. Kauvar and Raymond Funk, Asst. Public Defenders, Fairbanks, Brian Shortell and Dana Fabe, Public Defenders, Anchorage, for appellant.

Charles M. Merriner, Asst. Atty. Gen., Anchorage, and Wilson L. Condon, Atty. Gen., Juneau, for appellee.

Before BRYNER, C. J., and COATS and SINGLETON, JJ.

OPINION

COATS, Judge.

Robert Folger was charged with assault in the first degree, AS 11.41.200 (a felony), in connection with his stabbing of Gary Albert. He was tried before a jury and convicted of a lesser-included offense, assault in the third degree, AS 11.41.230 (a felony). His sole point on appeal challenges the trial court's refusal to give instructions

on self-defense. Folger relies on AS 11.81.-330 and AS 11.81.335.[1]

The evidence taken in the light most favorable to the defendant reveals the following: a dance held in the Tanana Community Hall on June 13, 1981 lasted through the early morning hours of June 14. Around 5:00 a. m., as the dance was breaking up, a scuffle began outside the hall. The scuffle involved Gary Albert and some other young people standing outside the hall at that time. When the scuffling was effectively over, Robert Folger, the defendant, emerged from the hall, and at some point shortly thereafter stabbed Albert in the stomach. None of the witnesses saw what occurred between Folger and Albert during those moments.

The victim, Gary Albert, remembered very little of what happened the morning of the 14th. He did not remember having an argument with the onlookers, did not remember seeing the knife when Folger stabbed him, and "just barely" remembered it *was* Folger who did the stabbing. Albert was impeached with his statements at the preliminary hearing to the effect that he "might have" argued with Folger or pushed him before being stabbed, and admitted telling a state trooper that he had been arguing with Folger, but maintained that he really couldn't be definite because he just couldn't remember. Albert did recall an incident with Folger about one month prior, however, in which Folger tried unsuccessfully to hit him with some numchucks while they were arguing.

Folger testified that Gary Albert was a bully and that he had tried to pick fights with Folger in the past. His usual response was to stay out of Albert's way. Folger said that he was afraid of Albert when Albert was drinking. The evidence showed that Albert was highly intoxicated just before this incident. The evidence further showed that Albert was 5'10" tall and weighed 175 pounds. Folger was 5'4" tall and weighed 125 pounds.

Folger testified that Albert started the encounter by approaching him. Albert was three to four feet away when he started to come at Folger. Folger believed Albert was advancing in order to beat him up and to take forcefully some beer that Folger was carrying in a backpack. Folger said that when he took out his knife, he intended to scare Albert but did not intend to stab him. Folger did not know if Albert was armed with a weapon, although Folger did not see any weapons. After Albert had been stabbed in the stomach, Folger left.

1. AS 11.81.330 and AS 11.81.335 read in pertinent part:

Sec. 11.81.330. *Justification: Use of nondeadly force in defense of self.* (a) A person may use nondeadly force upon another person when and to the extent he reasonably believes it necessary to defend himself from what he reasonably believes to be the use of unlawful force by the other person, unless

(1) the force involved was the product of mutual combat not authorized by law;

(2) the person claiming the defense of justification provoked the other person's conduct with intent to cause physical injury to the other person; or

(3) the person claiming the defense of justification was the initial aggressor.

(b) In circumstances described in (1)–(3) of (a) of this section, the person claiming the defense of justification may use nondeadly force if he has withdrawn from the encounter and effectively communicated his withdrawal to the other person, but the other person persists in continuing the incident by the use of unlawful force.

Sec. 11.81.335. *Justification: Use of deadly force in defense of self.* (a) Except as provided in (b) of this section, a person may use deadly force upon another person when and to the extent

(1) the use of nondeadly force is justified under § 330 of this chapter; and

(2) the person reasonably believes the use of deadly force is necessary to defend himself from death, serious physical injury, kidnapping, sexual assault in the first degree under AS 11.41.410(a)(1) or (2), sexual assault in the second degree, or robbery in any degree.

(b) A person may not use deadly force under this section if he knows that he can with complete safety as to himself and others avoid the necessity of so doing by retreating, except there is no duty to retreat if the person is

(1) on premises which he owns or which are leased to him and he is not the initial aggressor; or

(2) a peace officer acting within the scope and authority of his employment or a person assisting a peace officer under § 380 of this chapter.

■ The burden is on the defendant to produce some evidence in support of his claim of self-defense before he is entitled to a jury instruction on that defense. *Toomey v. State*, 581 P.2d 1124, 1126 n.6 (Alaska 1978). The term "some evidence" was defined, albeit in another context, by our supreme court in *LaLonde v. State*, 614 P.2d 808, 810 (Alaska 1980), as "evidence in light of which a reasonable juror could have entertained a reasonable doubt . . ." as to the element in question.

In the context of an insanity defense, our supreme court quoted with approval the following language:

> The subject matter being what it is, there can be no sharp quantitative or qualitative definition of "some evidence." Certainly it means more than a scintilla, yet, of course, the amount need not be so substantial as to require, if uncontroverted, a directed verdict of acquittal. The judgment of the trial judge as to the sufficiency of the evidence is entitled to great weight on appeal, but, since the defendant's burden is merely to raise the issue, any real doubt should be resolved in his favor.

*Christie v. State*, 580 P.2d 310, 314–315 (Alaska 1978) (quoting *McDonald v. United States*, 312 F.2d 847, 849 (D.C.Cir.1962) (*en banc*) (footnotes omitted)).

The supreme court has indicated that "any weakness or implausibility in the evidence supporting [a defendant's] story is not a relevant consideration." *Toomey v. State*, 581 P.2d at 1126 n. 10. The following facts from *Houston v. State*, 602 P.2d 784, 785 (Alaska 1979) (footnotes omitted) appear to reaffirm the language from *Toomey*:

> On the afternoon of June 3, 1976, Houston, a 26-year old sergeant in the United States Army, who was stationed at Fort Richardson, commenced drinking with four of his acquaintances. Later, the five men drove to a liquor store, purchased a bottle of rum, and consumed it in their car. The group then proceeded to the Montana Club, where each had two or three more drinks and shot pool for about an hour. After two of Houston's friends left to go home, the remaining three men, Houston, Elton Futrell, and Al Virgil went to Moby Dick's bar in Anchorage, where they stayed an hour and a half to two hours. At this time, Houston began to feel uncomfortable as he thought that everyone was watching him. Houston went to the men's room, and after returning, informed Virgil that he had loaded his pistol. The three men then returned to the Montana Club, where Futrell and Houston entered the men's room. After two or three individuals left the men's room, Houston and Futrell were alone when Donald Burwell entered. Houston testified that Burwell made some derogatory racial remarks to him and then made a movement toward his pocket. Houston said that he feared the victim (Burwell) was reaching for a gun, so Houston shot him twice. Houston testified the incident lasted about ten seconds.

The court held that Houston was entitled to a bifurcated trial since he had shown that he could present a substantial defense on both insanity and self-defense and that he could not try both of these defenses in the same trial without substantial prejudice. *Id.* at 788. Based on the *Toomey* and *Houston* decisions, we believe that even a weak or implausible self-defense claim is a question for the jury.

■ From his opening statement it appears that Folger's primary defense was self-defense.[2] Although his defense was extremely weak, he did present evidence from which a reasonable juror could conclude that self-defense existed. It is obvious why a trial judge would be less than impressed with Folger's explanation for his use of a dangerous weapon. However, Folger was entitled to a trial by a jury and a

**2.** The record on appeal does not include the final arguments so we are unable to tell what the defendant argued to the jury after his self-defense instructions were refused.

jury should have been instructed on his self-defense claim.[3]

The judgment of conviction is RE-VERSED.

SINGLETON, Judge, concurring.

The majority apparently holds that whenever two people are involved in a confrontation and as a result one suffers death or serious personal injury, and the other is charged with homicide or assault, the latter is entitled to a jury instruction on deadly and nondeadly force. The "confrontation" serves to meet the "some evidence test," at least to the extent buttressed by the defendant's statement that he had a purely subjective fear of injury, the case in *Houston v. State*, 602 P.2d 784 (Alaska 1979), or of a robbery, the case in *Folger*. Since I agree that this view is compelled by *Houston*, 602 P.2d at 785, I concur; but I believe *Houston* was wrongly decided for the reasons set out in Justice Matthews' dissent. *Id.* at 797.

---

3. We think a strong argument can be made that a trial judge should err on the side of giving instructions on self-defense so as to avoid a needless appellate issue in cases in which a weak case for self-defense is presented. We also think that in a case such as this where self-defense is presented as a possible defense, there is a danger that the jury may consider its own understanding of what self-defense is in the absence of an instruction from the court. It seems preferable to have the jury correctly instructed.