Harry J. JORDAN and Robert J. Jordan, Appellants,

v.

STATE of Alaska, Appellee.

No. 7782.

Court of Appeals of Alaska.

April 27, 1984.

Winston S. Burbank, Call, DeWitt, Barrett & Burbank, Fairbanks, for appellant Harry Jordan.

Dick L. Madson, Cowper & Madson, Fairbanks, for appellant Robert Jordan.

George F. Schaefer, Asst. Dist. Atty., Harry L. Davis, Dist. Atty., Fairbanks, and Norman C. Gorsuch, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

SINGLETON, Judge.

Dr. Harry Jordan and his sixteen-year-old son, Robert,. were convicted of taking a black bear the same day airborne. 5 AAC 81.075(A)(4).[1] As a penalty, Dr. Jordan's Cessna 185 airplane was ordered forfeited to the state. *See* AS 16.05.900; AS 16.05.-190.[2] Dr. Jordan had previously posted a $10,000 bond to obtain the release of the airplane pending trial. As an alternative to forfeiture of the airplane, Judge Blair offered Jordan the option of forfeiting the bond. The Jordans appeal their convictions contending that their prosecution violated their procedural and substantive due process rights. U.S. Const. amend. XIV; Alaska Const. art. 1, § 7. They also argue that the trial court committed reversible error by incorrectly instructing the jury on their defense of necessity. In addition, Dr. Jordan contends that forfeiture of his bond constituted an illegal and excessive fine. We affirm.

On September 7, 1982, Dr. Harry Jordan and his son, Robert, were hunting near the Melozitna River. Robert shot a moose. The Jordans salvaged most of the moose meat, taking it by plane to their permanent camp, but left the moose carcass. When they returned later, they discovered a black bear on the carcass. After unsuccessful attempts to drive off the black bear, Robert shot the bear at his father's direction. The Jordans then began skinning the bear. When he heard another plane approaching, Dr. Jordan began to conceal the bear carcass with willow branches. He explained this by saying that even though he felt justified in shooting the bear to protect the

---

1. 5 AAC 81.075(a)(4) provides in relevant part:

   (4) a person who has been airborne may not take or assist in taking big game until after 3:00 a.m. following the day in which the flying occurred....

2. Alaska Statute 16.05.900 provides, in relevant part:

   *Penalty for violations.* (a) A person who violates AS [16.05.870—16.05.895] or [16.05.920] or any regulation promulgated under this chapter is guilty of a misdemeanor and, upon conviction, is punishable by a fine of not more than $1,000 or by imprisonment for not more than six months, or by both.
   Alaska Statute 16.05.190 provides:
   *Seizure without warrant and confiscation by court.* Guns, traps, nets, fishing tackle, boats, aircraft, automobiles or other vehicles, sleds, and other paraphernalia used in or in aid of a violation of this chapter, or rule or regulation of the department may be seized under a valid search, and all fish and game, or parts of fish and game, or nests or eggs of birds, taken, transported, or possessed contrary to the provisions of this chapter, or rule or regulation of the department shall be seized by any person designated in § 150 of this chapter. Upon conviction of the offender or upon judgment of the court having jurisdiction that the item was taken, transported, or possessed in violation of this chapter or rule or regulation of the department, all fish and game, or parts of them are forfeited to the state and shall be disposed of as directed by the court. If sold, the proceeds of the sale shall be transmitted to the proper state officer for deposit in the general fund. Guns, traps, nets, fishing tackle, boats, aircraft, or other vehicles, sleds, and other paraphernalia seized under the provisions of this chapter, or rule or regulation of the department, unless forfeited by order of the court, shall be returned, after completion of the case and payment of the fine, if any.

moose meat, after the bear had been shot he found that the meat was spoiled and he felt the situation would be too difficult to explain.

Unknown to the Jordans, Officer Behan, a Fish and Wildlife protection officer, witnessed the whole scene from across the river. He testified that the Jordans made little effort to scare the bear away before killing it. According to Officer Behan only four minutes elapsed between the time he sighted their plane and the first shot was fired. He stated that all four shots were fired within about ten seconds. Behan testified that he saw Dr. Jordan pat Robert on the back and say "got a bear kid." He also saw Dr. Jordan take pictures of Robert with the bear in what he described as a "trophy pose."

## DISCUSSION

The Jordans' primary claim on appeal is that the trial court incorrectly instructed the jury on the defense of necessity. AS 11.81.320 provides:

*Justification: Necessity.* [ (a) ] Conduct which would otherwise be an offense is justified by reason of necessity to the extent permitted by common law when

(1) neither this title nor any other statute defining the offense provides exemptions or defenses dealing with the justification of necessity in the specific situation involved; and

(2) a legislative intent to exclude the justification of necessity does not otherwise plainly appear.

(b) The justification specified in (a) of this section is an affirmative defense.

Judge Blair found that the legislature had specifically authorized the Board of Fish and Game to enact regulations governing taking of fish and game, and that the board had duly enacted 5 AAC 81.375 which provides as follows:

*Taking of Game in Defense of Life or Property.* (a) Nothing in this chapter prohibits a person from taking game in defense of life or property provided that

(1) the necessity for the taking is not brought about by harassment or provocation of the animal or an unreasonable invasion of the animal's habitat;

(2) the necessity for the taking is not brought about by the improper disposal of garbage or a similar attractive nuisance; and

(3) all other practicable means to protect life and property are exhausted before the game is taken.

. . . .

(c) As used in this section, "property" is limited to

(1) dwellings, whether permanent or temporary;

(2) aircraft, boats, automobiles, or other means of conveyance;

(3) domesticated animals; and

(4) other property of substantial value necessary for the livelihood or survival of the owner.

The Jordans attack this regulation and the trial court's instruction based upon it on a number of grounds. First, they seem to argue that the reference in AS 11.81.320 to "this title [or] any other statute defining the offense" precludes an administrative regulation from limiting the defense of necessity. Judge Blair rejected this argument and we agree with his interpretation. Alaska Statute 16.05.255(a)(3) provides, in pertinent part:

*Regulations of the Board of Game.* (a) The Board of Game may make regulations it considers advisable in accordance with the Administrative Procedure Act [AS 44.62.010—44.62.650] for

. . . .

(3) establishment of the means and methods employed in the pursuit, capture and transport of game.

We are satisfied that 5 AAC 81.375 was properly enacted in accordance with AS 16.05.255, and, when read together with AS 11.81.320, establishes the only circumstances under which a defense of necessity can be interposed to a claim that game was illegally taken.

In our view, Judge Blair properly relied upon the following language from noted commentators on criminal law:

The defense of necessity is available only in situations wherein the legislature has not itself, in its criminal statute, made a determination of values. If it has done so, its decision governs....

When the necessity defense applies, it justifies the defendant's conduct in violating the literal language of the criminal law and so the defendant is not guilty of the crime in question. Where the defense does not apply, and yet the defendant did act with the good motive of preserving some value, his good motive, though not a defense, may be considered in mitigation of punishment for the crime committed.

W. LaFave & A. Scott, *Criminal Law*, § 50, at 382–83 (1972).

■ The defendants also assert that 5 AAC 81.375 does not satisfy the exception contained in AS 11.81.320(1) because it is not the enactment defining the offense. The Jordans vigorously argue that 5 AAC 81.075 defines the offense of taking game the same day airborne, but does not address the issue of necessity. We disagree. 5 AAC 81.375 defines the limits of the defense of necessity in all prosecutions charging the illegal taking of game.

Finally, the Jordans argue that the trial court impermissibly directed a verdict against them on the issue of necessity. The Jordans point to the following language contained in Jury Instruction No. 5:

If a hunter is legally prohibited from shooting a bear because he was airborne on the same day the bear was spotted, he is not allowed to kill the bear for the sole purpose of protecting moose meat.

■ A trial judge may not direct a verdict against the accused in a criminal case on any element of an offense or defense to be decided by the jury. *Connecticut v. Johnson*, —— U.S. ——, ——, 103 S.Ct. 969, 976, 74 L.Ed.2d 823, 832 (1983). We have held in a number of cases that a defendant is entitled to an instruction on a defense if there is "some evidence" in the record which supports the defense. *See, e.g., Paul v. State*, 655 P.2d 772, 775 (Alaska App.1982); *Folger v. State*, 648 P.2d 111, 113 (Alaska App.1982).

The revised criminal code differentiates between "defenses" and "affirmative defenses." AS 11.81.900(b)(1) provides:

(1) "affirmative defense" means that

(A) some evidence must be admitted which places in issue the defense; and

(B) the defendant has the burden of establishing the defense by a preponderance of the evidence.

In contrast, AS 11.81.900(b)(15) provides:

(15) "defense", other than an affirmative defense, means that

(A) some evidence must be admitted which places in issue the defense; and

(B) the state then has the burden of disproving the existence of the defense beyond a reasonable doubt.

■ *Folger* and *Paul* address ordinary defenses. We have never decided whether a defendant relying on an affirmative defense has an equal or greater burden when attempting to inject that defense into issue. We need not decide that question in this case. Assuming, *arguendo*, that the "some evidence" rule articulated in *Folger* and *Paul* applies to the defense of necessity, it is clear that the instruction reflected Judge Blair's conclusion that the Jordans failed to meet the "some evidence" test, *i.e.*, they failed to either present evidence on their own behalf or point to evidence in the prosecution's case-in-chief which would have brought their conduct within the defense of necessity as limited by 5 AAC 81.375. Where the trial court is not obligated to give an instruction on a defense, he does not violate the rule against directing a verdict against a defendant in a criminal case if he tells the jury in an instruction that the defense is not available. *See Sparf v. United States*, 156 U.S. 51, 105–06, 15 S.Ct. 273, 294–95, 39 L.Ed. 343, 362–63 (1895). *Cf. Horning v. District of Columbia*, 254 U.S. 135, 138–39, 41 S.Ct. 53, 54, 65 L.Ed. 185, 186–87 (1920) (peremptory instruction does not constitute a directed

verdict against the accused). If the trial court finds as a matter of law that an affirmative defense has no support in the evidence and so instructs the jury, the instruction does not amount to a directed verdict of guilt. *See also Hartley v. State,* 653 P.2d 1052, 1055 (Alaska App.1982).

■ The Jordans' only evidence in support of a necessity instruction supported an inference that they shot the bear to protect the moose carcass. We are satisfied that Judge Blair was not clearly mistaken in ruling that the Jordans' evidence would not justify a necessity instruction under 5 AAC 81.375(c).[3]

### SENTENCE

Dr. Jordan received the following sentence: (1) forty-five days to serve with forty-five days suspended; (2) forfeiture of the gun; (3) forfeiture of the bear hide and meat; (4) probation for one year; and (5) revocation of his hunting license for one year. In addition, Dr. Jordan was ordered to forfeit the Cessna 185 airplane that he flew on the day the bear was shot. The court gave Dr. Jordan the option of forfeiting a $10,000 bond, previously posted to obtain release of the airplane, in lieu of forfeiting the plane.

■ Dr. Jordan appeals his sentence as excessive. His only real complaint concerns the forfeiture of the airplane. He asserts that it is unclear whether the plane is to be forfeited, or whether the trial court imposed a $10,000 fine which would result in a forfeiture if not paid. Since the maximum fine allowed is $1,000, AS 16.05.900, Jordan contends that the sentence may be illegal. We disagree. Our review of Judge Blair's sentencing remarks and the judgment makes it clear to us that the loss of the airplane was not intended as a fine but as a forfeiture. Judge Blair never referred to a "fine" in his sentencing remarks, only to the fact that the airplane was to be forfeited. Dr. Jordan's sentence is not illegal. Cf. *F/V American Eagle v. State,* 620 P.2d 657, 671–72 (Alaska 1980), *appeal dismissed,* 454 U.S. 1130, 102 S.Ct. 985, 71 L.Ed.2d 284 (1982). Finally, Dr. Jordan contends that even if legal, the forfeiture of his plane was excessive under the circumstances. The trial court determined that the forfeiture of the airplane was necessary for the purpose of deterring the Jordans and others similarly situated from committing same day airborne violations. We agree. Since the airplane was an instrumentality by which Jordan committed the offense in question, its forfeiture was appropriate under the circumstances. *See* AS 16.05.190. The penalty imposed was not clearly mistaken. *McClain v. State,* 519 P.2d 811, 813–14 (Alaska 1974).

---

**3.** The Jordans raise a number of additional arguments: First, the Jordans argue that the Fish and Game regulations under which they were prosecuted, when viewed in their entirety, are unconstitutionally vague and overbroad. Specifically, they argue that 5 AAC 81.075(a)(4), which prohibits taking big game on the same day airborne; 5 AAC 81.218, which makes it unlawful to intentionally feed bears; 5 AAC 81.375, which provides for defense of property and self; and AS 16.30.010(a), which prohibits waste of wild food animals, when read together in light of the facts of their case, violate the constitution. We disagree. We do not believe that reasonable men and women situated as the Jordans were would have to guess at their rights under the regulations in question. *See F/V American Eagle v. State,* 620 P.2d 657, 665 (Alaska 1980), *appeal dismissed,* 454 U.S. 1130, 102 S.Ct. 985, 71 L.Ed.2d 284 (1982); *Stock v. State,* 526 P.2d 3, 8 (Alaska 1974). The overbreath doctrine applies only to criminal statutes allegedly infringing on First Amendment rights.

*State v. Rice,* 626 P.2d 104, 109 (Alaska 1981). It has no applicability to this case.

The Jordans also contend that the killing of the bear was justified because they had a property interest in the moose meat. To the extent that the regulations infringe upon their right to kill the bear in defense of property, the Jordans argue, they were deprived of their property without due process of law and without compensation. *See Cross v. State,* 370 P.2d 371, 377 (Wyo.1962). We disagree. The state regulations did not result in either a "taking" or an injury to the Jordans' property. They simply regulated the Jordans' right to shoot a bear. The Jordans did not suffer a loss of property without due process of law because their loss was incidental to the state regulation which was enacted to protect game. *Cf. Miller v. Schoene,* 276 U.S. 272, 48 S.Ct. 246, 72 L.Ed.2d 568 (1928) (state may require landowners to destroy trees that provide a habitat for pests injurious to apple trees without creating a constitutional right to compensation).

The judgment and sentence of the district court are AFFIRMED.