Peter C. ESMAILKA, Appellant,

v.

STATE of Alaska, Appellee.

No. A–1516.

Court of Appeals of Alaska.

July 10, 1987.

Marc Grober, Nenana, for appellant.

James V. Gould, Asst. Atty. Gen., Office of Special Prosecutions and Appeals, Anchorage, and Harold M. Brown, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

SINGLETON, Judge.

Peter C. Esmailka was convicted of perjury, a class B felony, in violation of AS 11.56.200(a). The maximum sentence is ten years in prison. AS 12.55.125(d). Presumptive sentences, respectively, are four years for a second-felony offender and six years for a third-felony offender. AS 12.-55.125(d)(1), (2). Esmailka received a sentence of three years with two and one-half years suspended. He appeals, challenging

his conviction and claiming that his sentence is excessive. We affirm.

Esmailka's prosecution grew out of the disappearance of Anthony Semaken. Esmailka and Semaken were close friends who had traveled in Esmailka's boat from Nulato, their home, to Galena in order to observe some boat races. It was expected that they would return together.

Esmailka testified, at a coroner's inquest looking into Semaken's disappearance, that Semaken had in fact returned to Nulato with him in Esmailka's boat. Other witnesses presented by the state testified that Esmailka had returned alone to Nulato. Based upon the conflict between Esmailka's testimony and the testimony of the other witnesses, a grand jury indicted Esmailka for perjury. Esmailka waived a jury trial and the case was heard by Superior Court Judge Jay Hodges. Judge Hodges accepted the state's evidence and found that Esmailka had knowingly given false testimony under oath to the coroner's jury.

Esmailka first argues that the trial court erred in failing to dismiss the indictment against him. He contends that the prosecutor failed to present exculpatory testimony to the grand jury. He relies on *Frink v. State*, 597 P.2d 154, 164–66 (Alaska 1979). Esmailka refers to potential testimony from Berchman Esmailka, his father, that the elder Esmailka had seen Semaken in Nulato the day after he allegedly returned with Esmailka from Galena. Semaken's presence in Nulato the following day, Esmailka reasons, corroborates his statement to the coroner's jury that Semaken returned with him.

Although Esmailka has not made a transcript of the grand jury proceedings a part of the record on appeal, he nevertheless argues, and the state apparently concedes, that Berchman Esmailka was not called as a witness before the grand jury.[1] The state argues, however, that Esmailka was not prejudiced by the exclusion of Berchman Esmailka's testimony because one of its witnesses told the grand jury that Berchman Esmailka had allegedly seen Se-

maken in Nulato the following day. Despite this testimony, Esmailka asserts that the state was obligated to call his father as a witness, and not present his assertion through the testimony of another witness. First, Esmailka argues that the state's actions did not comply with Alaska Rule of Criminal Procedure 6(q), which provides in part:

> When the grand jury has reason to believe that other available evidence will explain away the charge, it shall order such evidence to be produced and for that purpose may require the prosecuting attorney to subpoena witnesses.... The grand jury shall find an indictment when all the evidence taken together, if unexplained or uncontradicted, would warrant a conviction of the defendant.

In *Frink*, the supreme court held that "when a district attorney seeking an indictment is aware of evidence reasonably tending to negate guilt, he is obligated ... to inform the grand jury of its nature and existence, so that the grand jury may exercise its power under the [rule] to order the evidence produced." 597 P.2d at 165 (*Johnson v. Superior Court*, 15 Cal.3d 248, 124 Cal.Rptr. 32, 36, 539 P.2d 792, 796 (1975)). However, the court explained:

> [T]he prosecutor's obligation to present exculpatory evidence to the grand jury does not turn the prosecutor into a defense attorney; the prosecutor does not have to develop evidence for the defendant and present every lead possibly favorable to the defendant.

*Frink*, 597 P.2d at 166.

We are not persuaded that the prosecutor violated his duty in this case. The grand jury was apparently informed of the nature and existence of Berchman Esmailka's testimony. It was thus able to determine for itself whether it wished to exercise its authority, under Alaska Criminal Rule 6(q), to order that Berchman Esmailka be subpoenaed for the purpose of hearing his testimony under oath. Assuming, without having the record before us,

---

**1.** Esmailka's failure to specify the record before the grand jury as part of the record on appeal provides an independent basis for rejecting his arguments on appeal.

that the grand jury did not order Berchman Esmailka's presence, it apparently did not view his testimony as particularly important.[2] We are satisfied that the evidence in this case was sufficient to justify the indictment. 597 P.2d at 163.[3]

Esmailka next argues that the trial court erred in failing to grant his motion to suppress testimony he gave at the coroner's inquest. In Esmailka's view, the magistrate conducting the inquest failed to safeguard Esmailka's fifth amendment right to remain silent. Resolution of this issue turns on Alaska Evidence Rule 412, which provides:

> Evidence illegally obtained shall not be used over proper objection by the defendant in a criminal prosecution for any purpose except:
>
> (1) a statement illegally obtained in violation of the right to warnings under *Miranda v. Arizona*, 384 U.S. 436 [86 S.Ct. 1602, 16 L.Ed.2d 694] (1966), may be used in a prosecution for perjury if the statement is relevant to the issue of guilt or innocence and if the prosecution shows that the statement was otherwise voluntary and not coerced; and
>
> (2) other evidence illegally obtained may be admitted in a prosecution for perjury if it is relevant to [sic] issue of guilty or innocence and if the prosecution shows that the evidence was not obtained in substantial violation of rights.

We have had occasion to interpret this rule in *Wortham v. State*, 657 P.2d 856, 857 (Alaska App.1983), *modified on appeal*, 666 P.2d 1042 (Alaska 1983) (*Wortham II*) and *Wortham v. State*, 641 P.2d 223 (Alaska App.1982) (*Wortham I*). Since Esmailka was prosecuted for perjury, the exceptions to the rule are of primary importance. In *Wortham II*, the supreme court quoted with approval, the following language from a concurring opinion in this court:

> [T]he drafters of the rule did not intend to bar the introduction of evidence obtained in violation of the fourth and fifth amendments, and their Alaska counterparts, unless the violation of rights was such that it independently violated due process. In the absence of coercion, violence or brutality to the person, I would admit evidence obtained in violation of the fourth and fifth amendments in perjury prosecutions.

666 P.2d at 1043 (citations omitted), *Wortham*, 657 P.2d at 858 (Singleton, J., concurring). Assuming, without deciding, that the warnings Esmailka received at the coroner's inquest were less than adequate, it does not appear that any error committed by the magistrate conducting the inquest amounted to a flagrant or egregious invasion of Esmailka's personal rights. *See, e.g., Wortham II*, at 1043.[4] Nor does it

---

**2.** During his testimony, Officer Lohmer told the grand jury that he did not believe Berchman Esmailka's statement. This was improper and should not have been permitted. Officer Lohmer's testimony disparaging the credibility of Esmailka violated the spirit of Alaska Criminal Rule 6(q); we believe it would have been a better practice for the prosecutor to have avoided such editorial comment by the witnesses. *Cf. Frink*, 597 P.2d at 162–63 (criticizing police officers testifying to and interpreting scientific reports). However, in light of the trial record, we find that any error was harmless.

**3.** Esmailka argues that testimony regarding Berchman Esmailka's assertion was "hearsay" that could only be presented to the grand jury if it satisfied an exception to the hearsay rule or was otherwise necessary. *State v. Gieffels*, 554 P.2d 460, 464–65 (Alaska 1976). This rule, however, only applies to testimony upon which the state relies for the return of an indictment. *See State v. Taylor*, 566 P.2d 1016, 1019 (Alaska

1977). It has no application to allegedly exculpatory evidence which the state is under a duty to present in order to enable the grand jury to fulfill its obligations under Alaska Criminal Rule 6(q).

**4.** Apparently the magistrate conducting the inquest was unsuccessful in attempting to subpoena Esmailka. On appeal, Esmailka argues that the magistrate had him arrested and brought to the inquest in custody. The record does not indicate that Esmailka argued to the trial court that he was in custody when he appeared before the magistrate. Nor did Esmailka argue that the totality of the circumstances constituted entrapment though he appears to be implicitly arguing this on appeal. We will not consider these arguments for the first time on appeal. Esmailka concedes that warnings similar to those required by *Miranda* were given, but complains that he was not told that he had a right to a lawyer appointed at public expense to advise him about testifying at the inquest. Esmailka

appear that Esmailka's statements to the coroner's jury were involuntary or the product of coercion. Their reliability, of course, was the issue in the perjury prosecution. Use of Esmailka's testimony at the trial did not violate A.R.E. 412. Consequently, it is not necessary for us to determine what warnings, if any, Esmailka was entitled to receive prior to being called as a witness at a coroner's inquest. *See, e.g., Nicholi v. State,* 451 P.2d 351 (Alaska 1969).

Esmailka next argues that the trial court erred in failing to acquit him.

According to a recognized authority on the federal rules of criminal procedure:

> [O]n the ultimate finding of guilt [by a trial court sitting without a jury in a criminal case], the usual rule is that it must stand if it is supported by substantial evidence. On findings by the court on issues other than the ultimate issue of guilt, there is general agreement that the "clearly erroneous" test should be applied and that it has the same meaning in criminal cases as it has in civil cases.

2 C. Wright, *Federal Practice and Procedure* § 374 at 315–16 (2d ed. 1982) (footnotes omitted). Alaska law is in accord with these rules. *See Martin v. Fairbanks,* 456 P.2d 462, 463–65 (Alaska 1969); *Beck v. State,* 408 P.2d 996, 997 (Alaska 1965). In Alaska, "[t]he question, then, [whether a defendant is entitled to a judgment of acquittal] is whether the finding of guilt is supported by substantial evidence, that is, such relevant evidence which is adequate to support a conclusion by a reasonable mind that there was no reasonable doubt as to appellant's guilt." *Beck,* 408 P.2d at 997 (footnotes omitted). A challenge to the sufficiency of the evidence at the close of the prosecution's case in a case tried to the court should be considered by the same standard as in a jury case. 2 C. Wright, *Federal Practice and Procedure* § 467 at 666 & n. 37. The Alaska rule regarding sufficiency of the evidence is also consistent with the United States Constitution as interpreted in *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

Esmailka recognizes that the testimony of Pat and Mary Madros presented at his trial permits reasonable inferences which conflict with his testimony presented to the coroner's jury and, if believed, would support his conviction for perjury. He argues, however, that the Madroses' testimony was insufficient as a matter of law. Esmailka's argument, while somewhat unclear, seems to intertwine three related doctrines.

First, where a party relies on negative evidence, *i.e.,* testimony that a witness did not see an event in order to support an inference that the event did not occur, the rule is that the person allegedly witnessing the event must have been in a position to see it. *See, e.g.,* 2 J. Wigmore, *Evidence* § 664 at 907 (Chadbourn rev. ed. 1979). Thus, while the Madroses' statement, that they did not see Semaken in Esmailka's boat, is direct evidence, the jury must infer from that evidence that Semaken was not in the boat, *i.e.,* that if he had been in the boat the Madroses would have seen him. In part, therefore, the state's case rests on circumstantial evidence.

Second, Esmailka seems to be arguing the rule that where the state relies on circumstantial evidence to prove guilt, the evidence must exclude every reasonable hypothesis except guilt, *i.e.,* exclude every reasonable theory consistent with innocence. *See Davis v. State,* 369 P.2d 879, 882–83 (Alaska 1962). While Esmailka did not testify at his perjury trial, his theory of the case was that Semaken was sleeping on the bottom of his boat underneath a tarp. In order to convict him, Esmailka seems to be arguing, the state must present evidence inconsistent with his theory.

Finally, Esmailka seems to be relying on the physical facts doctrine, *i.e.,* the proposition that testimony of a witness, which is opposed to the unquestionable laws of nature, or which is clearly in conflict with scientific principles as established by the

also complains that the magistrate encouraged him to testify. Assuming that Esmailka properly characterizes what occurred at the inquest, he has failed to establish a right to suppression under Alaska Evidence Rule 412.

laws of physics or mechanics, is of no probative value. *See, e.g., Granat v. Schoepski,* 272 F.2d 814, 815 (9th Cir.1959); *State v. Puckett,* 691 S.W.2d 491, 493 (Mo.App. 1985). Esmailka argues that Pat Madros admitted that he could not see into the bottom of the boat, thus his testimony was not inconsistent with the hypothesis or theory that Semaken was asleep in the bottom of the boat under a tarp. Mary Madros testified that she could see into the bottom of the boat. Esmailka contends, however, that her testimony was incredible. He relies, in part, on pictures of the boat showing its configuration, but primarily upon the testimony of Pat Madros as to Mary's position at the time she made the alleged observations of Esmailka. Esmailka interprets Madros as testifying that Esmailka's boat was approximately a hundred feet from the bank of the river, that Madros was at river level, and that his wife was approximately thirty-five feet above him on the bank. Based upon this testimony, Esmailka constructed his exhibit J which purports to show that Mary Madros could not have seen into the bottom of his boat.

 Esmailka's argument is subject to a number of flaws. First, the supreme court has repudiated the rule that circumstantial evidence must be consistent with guilt and inconsistent with any theory of innocence before it can withstand a motion for judgment of acquittal. *See Des Jardins v. State,* 551 P.2d 181, 184–85 (Alaska 1976). More significantly, the physical facts doctrine has no application where the testimony regarding the position, speed, etc., of movable objects is based on estimates by a witness giving oral testimony. *See Hopfer v. Staudt,* 207 Or. 487, 298 P.2d 186, 189 (1956). It only applies to testimony established as being physically impossible as a matter of law and has no application where the credibility of witnesses is involved. *Puckett,* 691 S.W.2d at 493–94. Here, Esmailka's calculations are all based on estimates by Pat Madros, consequently, the credibility of Madros' testimony was in issue. Under these circumstances, whether Pat and Mary Madros would have seen Semaken had he been in the boat was a question for the trier of

fact. *See Anthony v. State,* 521 P.2d 486, 492 (Alaska 1974) (the assessment of witness credibility is exclusively within the province of the jury). The trial court did not err in denying a motion for judgment of acquittal and in finding that the evidence was sufficient to sustain Esmailka's conviction.

Esmailka next argues that the trial court erred in imposing a three-year sentence with two and one-half years suspended. Our review of this issue is complicated by Esmailka's failure to include in the record on appeal a transcript of the sentencing hearing. In essence, Esmailka argues that he has already been rehabilitated, that he has a spotless record and that a sentence of imprisonment is not necessary for his rehabilitation, or deterrence, for the deterrence of others, community condemnation, or for the reaffirmation of societal norms. *See, State v. Chaney,* 477 P.2d 441, 443–44 (Alaska 1970).

 Esmailka was convicted of a class B felony. As a first offender, in the absence of aggravating factors, he should have received a sentence substantially more favorable than the four-year presumptive sentence for a second-felony offender. *Austin v. State,* 627 P.2d 657 (Alaska App.1981). A sentence of three years with two and one-half years suspended clearly satisfies this requirement. Perjury is a serious offense: The sentence in this case was not more severe than sentences previously approved by Alaska appellate courts for comparable offenders committing similar offenses. *See, e.g., DeMan v. State,* 677 P.2d 903, 910–12 (Alaska App.1984) (concurrent four-year sentences for perjury affirmed for first offender); *Boyles v. State,* 647 P.2d 1113, 1119 (Alaska App.1982), *cert. denied,* 460 U.S. 1042, 103 S.Ct. 1437, 75 L.Ed.2d 795 (1983) (three-year sentence affirmed for first offender with otherwise spotless record who in addition to perjuring himself suborned perjury by another witness). *See also Huff v. State,* 598 P.2d 928, 936 (Alaska 1979) (affirming three-year sentence for perjury for first offender). The sentence of the superior court was not clearly mistaken.

*McClain v. State*, 519 P.2d 811, 813–14 (Alaska 1974).

The judgment and sentence of the superior court are AFFIRMED.