Barry R. GILBREATH, Appellant,

v.

MUNICIPALITY OF ANCHORAGE, Appellee.

No. A-2485.

Court of Appeals of Alaska.

April 21, 1989.

---

William D. Cook, Anchorage, for appellant.

James Hopper, Certified Legal Intern, John E. McConnaughy, III, Asst. Mun. Prosecutor, James Wolf, Mun. Prosecutor, and Richard D. Kibby, Mun. Atty., Anchorage, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

SINGLETON, Judge.

### FACTS

Barry R. Gilbreath was convicted by a jury of driving while intoxicated (DWI). Anchorage Municipal Code (AMC) 09.28.-020. He appeals his conviction. We affirm.

Anchorage Police Department (APD) Officers Plummer and Nix encountered Gilbreath as they drove to the APD substation at Fourth Avenue and D Street in Anchorage on November 30, 1987. Gilbreath's car was stuck in the snow in the driving lane at the intersection of D Street and Fifth Avenue and was apparently blocking traffic. It appears that Gilbreath had been stopped for some time and at one point put a rug down to aid in obtaining traction.

The officers were unsure as to whether Gilbreath was in his car attempting to drive it or standing beside the car when they first approached him. The officers told Gilbreath to drive the car and they attempted to help him by pushing the rear of the car and giving instructions to Gilbreath on which way to turn the wheels. Gilbreath's failure to follow instructions led Officer Plummer to request that Gilbreath get out of the car. After smelling an odor of alcohol, Plummer had Gilbreath perform several field sobriety tests.

According to Plummer, Gilbreath failed to perform the tests satisfactorily and Plummer placed him under arrest for DWI. Officer Nix then switched places with Gilbreath and drove the car while Gilbreath, Officer Plummer, and another police officer pushed. The vehicle was successfully extricated from its predicament and legally parked. Gilbreath subsequently walked to the nearby police substation with the officers and was given a breath test. Gilbreath produced a .215 blood alcohol reading. The test was administered on the Intoximeter Model 3000. Additional facts will be set out where necessary to explain our decision.

### DISCUSSION

Gilbreath's first claim of error concerns the denial of his pretrial motion to suppress the breath test for failure to comply with 7 Alaska Administrative Code (AAC) 30.-020(1). In order to place Gilbreath's argument in context, it is necessary to briefly discuss the foundational requirements before the results of an Intoximeter test may be admitted into evidence.[1] Alaska Rule of

1. It is possible that Gilbreath misperceived his remedy. He brought a pretrial motion to suppress evidence based on the assertion that the municipality could not lay a proper foundation for the admission of the Intoximeter evidence. Alaska Criminal Rule 12(b) permits any defense, objection or request which is capable of determination without the trial of the general issue to be raised before trial by motion. The rule specifically permits motions to suppress evidence on the grounds that the evidence was illegally obtained. *See* Alaska R.Crim.P.

Evidence 901 deals generally with foundation for the admission of evidence. This rule is satisfied "by evidence sufficient to support a finding that the matter in question is what its proponent claims" subject to a significant qualification:

(a) Whenever the prosecution in a criminal trial offers (1) real evidence which is of such a nature as not to be readily identifiable, or as to be susceptible to adulteration, contamination, modification, tampering, or other changes in form attributable to accident, carelessness, error or fraud, or (2) testimony describing real evidence of the type set forth in (1) if the information on which the description is based was acquired while the evidence was in the custody or control of the prosecution, the prosecution must first demonstrate as a matter of reasonable certainty that the evidence is at the time of trial or was at the time it was observed properly identified and free of the possible taints identified by this paragraph.

A.R.E. 901(a). The rule also provides that the trial court may, in an appropriate case, "require additional proof before deciding whether to admit or exclude evidence under Rule 403." A.R.E. 901(b).

This rule is qualified somewhat by Alaska Rule of Evidence 902, which provides that extrinsic evidence of authenticity as a condition precedent to admissibility is not required with respect to the following:

(10) *Presumptions created by law.* Any signature, document, or other matter declared by enactment of the Alaska Legislature or rule prescribed by the Alaska Supreme Court to be presumptively or prima facie genuine or authentic.

Alaska Statute 28.35.033(d) [2] provides:

(d) To be considered valid under the provisions of this section the chemical analysis of the person's breath or blood shall have been performed according to methods approved by the Department of Health and Social Services. The Department of Health and Social Services is authorized to approve satisfactory techniques, methods, and standards of training necessary to ascertain the qualifications of individuals to conduct the analysis. If it is established at trial that a chemical analysis of breath or blood was performed according to approved methods by a person trained according to techniques, methods and standards of training approved by the Department of Health and Social Services, there is a presumption that the test results are valid and further foundation for introduction of the evidence is unnecessary.

The Commissioner of Health and Social Services is authorized to adopt regulations necessary to carry out the business of the department and the provisions of the law relating to public health. AS 18.05.-040(a)(6). Pursuant to AS 28.35.033(d), the Commissioner enacted 7 Alaska Administrative Code (AAC) 30.005–.080 for safeguarding the scientific integrity of the breath test procedure. *See* 7 AAC 30.005. Among the relevant regulations is 7 AAC

12(b)(3). This would appear to follow from the fact that questions regarding illegally obtained evidence do not require trial of the "general issue," *i.e.*, the facts regarding the elements of the offense and any defense. In contrast, the municipality's ability to lay a foundation for the admissibility of evidence would appear to involve the facts of the case, *i.e.*, the quality of the evidence. *See, e.g.*, A.R.E. 104(a) (dealing with foundations). It is possible Gilbreath's pretrial motion was improper and that his remedy was an objection at the time of trial. In this case, Gilbreath went to trial and was convicted. Consequently, the fact that he made the motion before trial, rather than at trial, would not seem significant and we proceed to address the issue. *Lawrence v. State*, 715 P.2d 1213, 1217 (Alaska App.1986).

**2.** This provision is virtually identical to AMC 09.28.023(D) which states:

To be considered valid under the provisions of this section, the chemical analysis of the person's breath or blood shall have been performed according to methods approved by the Alaska Department of Health and Social Services. If it is established at trial that a chemical analysis of breath or blood was performed according to approved methods by a person trained according to techniques, methods and standards of training approved by the Department of Health and Social Services, there is a presumption that the test results are valid and further foundation for introduction of the evidence is unnecessary.

30.010, which "approves the Intoximeter breath test instrument Model 3000 series, for use in ascertaining the alcohol content of a breath sample by chemical analysis of the breath." Also relevant to this case is 7 AAC 30.020, which provides in relevant part:

> The following procedures must be used to obtain and analyze breath samples on the Intoximeter 3000
>
> (1) Observe the person to be tested, for at least 20 minutes immediately before testing, to ensure that the person does not regurgitate or place anything in his or her mouth during that period[.]

We have addressed the Commissioner's regulations as they pertain to foundation for the admissibility of Intoximeter results in *Ahsogaek v. State*, 652 P.2d 505, 506 (Alaska App.1982). In that case, we said:

> AS 28.35.033(d) essentially establishes foundational requirements for the admission of breathalyzer test results. If the state can show that the regulations of the Department of Health and Social Services have been followed, then a sufficient foundation has been established and the breathalyzer test is admissible. If the state does not strictly comply with the regulations, then it can still show that it has substantially complied with the regulations in order to establish a sufficient foundation to admit the breathalyzer examination.

Whether the police complied with the requirements set out in the regulations is a question of fact. On appeal, we examine the trial court's fact findings in criminal cases, other than on the ultimate issue of guilt, under the "clearly erroneous" test. *See Esmailka v. State*, 740 P.2d 466, 470 (Alaska App.1987). We have also applied the "clearly erroneous" test to the mixed question of fact and law of whether the municipality has "substantially complied" with the applicable regulations. *Macauly v. State*, 734 P.2d 1020, 1026 (Alaska App. 1987).

■ Gilbreath alleges that Officer Plummer failed to observe him for the required twenty-minute period prior to administering the breath test. District Court Judge David C. Stewart denied the motion after listening to testimony from Plummer and to the tape cassette made at the police substation that night. Plummer testified that he had observed Gilbreath for twenty minutes. Part of the twenty minutes included the time spent pushing the vehicle out of the snow (after Gilbreath failed the field sobriety test and was placed under arrest). Judge Stewart found that, as a matter of law, the Municipality of Anchorage (MOA) had substantially complied with the twenty-minute observation period.

Gilbreath objects to the court's finding of substantial compliance. Gilbreath contends that the time he spent pushing the car alongside the officer should not have been included in computing the twenty-minute period. Gilbreath points out that, although the officer testified that he was observing Gilbreath's face during that period, circumstances indicate that the officer could not rule out the possibility that Gilbreath may have regurgitated or placed something in his mouth. Gilbreath did not testify and does not argue that he, in fact, did regurgitate or put something in his mouth during that time. Further, Gilbreath points out that the tape of his activities at the police station that was made in connection with the administration of the Intoximeter examination lasted only about 10½ minutes. He contends that the court's conclusion that it took more than 9½ minutes to push the car out of the street, go to the police station, and start the cassette tape was based on pure speculation. The municipality disputes that the 9½ minute time frame was speculation. It points to Plummer's testimony that he looked at his watch when he placed Gilbreath under arrest and it read 2:35 a.m. Later, when Plummer gave Gilbreath the breath test, the watch read 2:56 a.m. The municipality also points out that Officer Plummer testified that he watched Gilbreath closely and did not see him place anything in his mouth or regurgitate.

Given Plummer's testimony, the trial court's finding that he had observed Gilbreath for twenty minutes is not clearly erroneous. Such a finding supports the

legal conclusion that the municipality strictly complied with the regulation. Therefore, Judge Stewart was not clearly erroneous in reaching the lesser conclusion that the municipality had substantially complied with the regulation. *See Ahsogaek,* 652 P.2d at 506. In any event, any dispute concerning strict compliance with the twenty-minute observation period went to the weight of the evidence. Gilbreath was not precluded from arguing about the weight the jury should give the breathalyzer result. *See Lawrence,* 715 P.2d at 1217.

■ Gilbreath's second claim of error concerns the admission, over objection, of the breath test results at trial. Gilbreath contends that there was a separate foundational defect regarding the admission of the breath test because the municipality failed to introduce evidence regarding the alcohol content of the "nalco" bottle, which was used as an external standard in connection with the Intoximeter 3000. In his arguments before Judge Stewart, Gilbreath appears to have conceded that, except with regard to the twenty-minute observation period, the municipality complied with the letter of 7 AAC 30.010–.080. He argued that, nevertheless, the accuracy of the breathalyzer result depended, in part, on the accuracy of the external standard. According to Gilbreath, in order to verify the external standard, it was necessary to test the content of the bottle to determine its alcohol content. Gilbreath notes that the operator testified that, as part of the operation procedure, he took a number from the nalco bottle and programmed it into the Intoximeter 3000. *See* 7 AAC 30.020(2) ("The following procedures must be used to obtain and analyze breath samples on the Intoximeter 3000 ... respond to the visual display on the instrument by entering the data requested."). The Intoximeter apparently requested the number from the nalco bottle.

We are satisfied that the trial court did not err in rejecting Gilbreath's objection. The administrative code does not require evidence of the ethanol value of the external standard. Consequently, once the statutory foundation was established, the Intoximeter result was admissible and no further foundation was required. *See* AS 28.-35.033(d). If Gilbreath wished to attack the accuracy of the Intoximeter result by showing that the external standard was inaccurate, he was obligated to do so by introducing evidence. *See Lawrence,* 715 P.2d at 1217; *Pears v. State,* 672 P.2d 903, 909 (Alaska App.1983), *rev'd on other grounds,* 698 P.2d 1198 (Alaska 1985); *Cooley v. Anchorage,* 649 P.2d 251, 254–55 (Alaska App.1982); *Denison v. Anchorage,* 630 P.2d 1001, 1004 (Alaska App.1981). There is nothing in the record to suggest that Gilbreath was limited in introducing evidence challenging the Intoximeter result, but Gilbreath did not present any evidence on this point. Specifically, he did not present testimony that the current method of labeling and using the external ethanol value standard results in Intoximeter malfunctioning. Such evidence, if it existed, should have been presented during Gilbreath's case-in-chief. Gilbreath's objection was therefore insufficient to prevent admission of the test results.

■ Gilbreath's final claim of error concerns the court's response to the jury question, "Is it a violation of the law for Gilbraith [sic] to drive the vehicle at the police officer's direction if he was under the influence of alcohol?" After consulting with counsel, Judge Ralph Stemp, responded, "If he were under arrest the answer is no. Otherwise the answer is yes." Gilbreath originally argued that the court should have answered with a simple no. Gilbreath also argued that the municipality improperly referred in closing argument to Gilbreath's unsuccessful attempts to extricate his vehicle from the snow bank while the officers were assisting him. According to Gilbreath, this confused the jury by implying that the officer was giving Gilbreath a driving test, *i.e.,* implying that the officer believed Gilbreath was intoxicated and tested this belief by having him operate the vehicle during the attempt to extricate it. In Gilbreath's view, the municipalities closing arguments prompted the question from the jury.

In his motion for a new trial, Gilbreath expanded on his argument, contending that the language from the Alaska Pattern Jury Instructions on "Justification—Performance of a Public Duty," should have been given in response to the jury's question. In his memorandum in support of his motion for a new trial, Gilbreath argued that the police had a duty to keep D street clear of traffic by moving Gilbreath's vehicle from the middle of the street. Gilbreath did not testify or put on any evidence. Nevertheless, he contends that the jury could have inferred that he had a reasonable belief that his conduct was authorized or justified when he attempted to drive the car at the police officer's direction.[3]

Gilbreath never indicated an intent to rely on this justification defense at any time before the jury began deliberations. He made no opening statement and presented no witnesses. In closing argument, defense counsel argued that Gilbreath was not intoxicated. Defense counsel pointed out how well Gilbreath performed the field sobriety test. In addition, defense counsel pointed to the evidence which cast doubt on whether the required twenty-minute waiting period was met. Gilbreath also pointed out that he was not given a preliminary breath test (PBT) or the heel-to-toe test. Counsel contended that Gilbreath's ability to control himself while performing field sobriety tests conflicted with the breathalyzer result of .215. Gilbreath's argument about whether he was driving was confined to comments that the police directed him to drive when they first contacted him, and that the officers never asked him if he had been driving or how his car became stuck. It appears Gilbreath was arguing that because the police allowed him to drive while attempting to extricate his vehicle from the snow, they impliedly believed he was not intoxicated.

Under the circumstances, we do not believe that Gilbreath suffered prejudicial error when the trial court answered the jury's question in the manner it did. A number of reasons lead us to this conclusion.

At the outset, we recognize that there is authority for the proposition that a person may defend against a charge of drunk driving if the person operated the vehicle at the direction of a police officer. *See, e.g., State v. Lichti,* 219 Neb. 894, 367 N.W.2d 138, 141 (1985); *People v. Jensen,* 37 Ill. App.3d 1010, 347 N.E.2d 371, 375 (1976). *See also Hempstead T–W Corp. v. Hempstead,* 13 Misc.2d 1054, 177 N.Y.S.2d 445, 454 (Sup.Ct.), *aff'd,* 7 A.D.2d 637, 179 N.Y. S.2d 848 (1958) (where the court said that it is a defense to removal of a vehicle in violation of an ordinance if the operator acted in response to police direction). *But see State v. Schoenheide,* 104 Wis.2d 114, 310 N.W.2d 650, 651 (App.1981) (holding that a firefighter who drove while intoxicated could not rely on a defense that applies when the actor's conduct is in good faith and is an apparently authorized and reasonable fulfillment of any duties of a public office, because no reasonable person could conclude that firefighters are apparently authorized to drive while intoxicated). We also recognize that a trial judge may not direct a verdict against the accused in a criminal case on an element of an offense or defense to be decided by the jury. *Connecticut v. Johnson,* 460 U.S. 73, 84, 103 S.Ct. 969, 976, 74 L.Ed.2d 823 (1983). Further, we have held in a number of cases that a defendant is entitled to an instruction on a defense if there is "some evidence" in the record which supports the defense. *See, e.g., Paul v. State,* 655 P.2d 772, 775 (Alaska App.1982); *Folger v. State,* 648 P.2d 111, 113 (Alaska App.1982).

---

**3.** Alaska Statute 11.81.420 provides in relevant part:

> *Justification: Performance of public duty.* (a) ... [C]onduct which would otherwise constitute an offense is justified when it is required or authorized by law or by a judicial decree, judgment, or order.
> (b) The justification afforded by this section also applies when

. . . .

> (2) the person [accused] reasonably believes the conduct to be required or authorized to assist a peace officer in the performance of the officer's duties, notwithstanding that the officer exceeded the officer's authority.

In *Nathaniel v. State*, 668 P.2d 851 (Alaska App.1983), we discussed the "some evidence" test, saying:

> In order to satisfy the "some evidence" test, it is not necessary that the defendant testify or even offer direct evidence in his own behalf. Some evidence establishing a dispute as to a factual issue may arise from a weakness in the prosecution's evidence or from impeachment of its witnesses. Similarly, circumstantial evidence presented as part of the state's case-in-chief may give rise to some evidence of a disputed fact.

*Nathaniel*, 668 P.2d at 855 (citations omitted).

However, we have also held that where the trial court is not obligated to give an instruction on a defense, it is permissible to tell the jury in an instruction that the defense is not available; such an instruction does not violate the rule prohibiting directing a verdict against a criminal defendant. *See Sparf v. United States*, 156 U.S. 51, 105–06, 15 S.Ct. 273, 294–95, 39 L.Ed. 343 (1895); *Jordan v. State*, 681 P.2d 346, 349–50 (Alaska App.1984). *See also Hartley v. State*, 653 P.2d 1052, 1055 (Alaska App. 1982). If the trial court finds, as a matter of law, that an affirmative defense has no support in the evidence and instructs the jury that the defense is unavailable, then such an instruction does not amount to a directed verdict of guilt. *Jordan*, 681 P.2d at 350.

In this case, there is arguably "some evidence" in support of a justification defense. However, Gilbreath never made an opening statement indicating an intent to rely on the defense. *See* Alaska R.Crim.P. 27(a)(2)(ii) ("If no statement of the defendant's case is made after the statement of the prosecution's case, then after the state has produced its evidence and presented its case in chief, the defendant, or his counsel, if he intends to produce evidence, shall state his defense, and may briefly state the evidence he expects to offer in support of it."). Nor did Gilbreath request a jury instruction regarding the defense of justification. *See* Alaska R.Crim.P. 30(a). In our view, by failing to make an opening state-ment or to request a jury instruction or to otherwise introduce this defense, Gilbreath forfeited the right to rely upon the defense of justification or authorization. Therefore, the trial court did not abuse its discretion when it failed *sua sponte* to instruct on the defense. Because Gilbreath had forfeited the right to rely on the defense, the court would then have been permitted to instruct the jury that the elements of the municipality's case were to (1) prove that Gilbreath was in actual physical control of the vehicle, and (2) prove that Gilbreath was intoxicated. *See State Dep't of Public Safety v. Conley*, 754 P.2d 232, 233–36 (Alaska 1988); *Lathan v. State*, 707 P.2d 941, 942–43 (Alaska App.1985). Thus, the court would have been permitted to instruct the jury that, in deciding whether the municipality had proved its case beyond a reasonable doubt, it was not relevant that Gilbreath may have been driving at the police officer's direction.

We find support for this conclusion in our recent decision in *Rollins v. State*, 757 P.2d 601 (Alaska App.1988). Rollins was charged, *inter alia*, with assault in the third degree. Defense counsel initially submitted a proposed instruction on the lesser-included offense of assault in the fourth degree, but then withdrew it. The state never objected to Rollin's withdrawal of the proposed lesser-included offense instruction. The case was argued on the theory that the jury should either accept or reject the assault in the third degree charge, without consideration of lesser-included offenses. *Id.* at 602. After deliberating for several hours, the jury sent a written question to the court, stating: "We the jury would like to know if the wording can be changed ... to exclude *serious* (Count II) 3° to a 4° misdemeanor." *Id.* (emphasis in original). Rollins objected to any instruction on assault in the fourth degree, but the trial judge nevertheless gave an instruction. The jury eventually returned a verdict on count two acquitting Rollins of third degree assault, but convicting him of fourth degree assault. On appeal, Rollins contended that, in making his closing argument to the jury, he reasonably and detrimentally relied on the trial

court's willingness to omit the lesser-included offense from the instructions initially given to the jury. We found Rollins argument persuasive and reversed. We said:

> The instructions that were given to the jury, which were approved prior to final argument in accordance with Criminal Rule 30(a), omitted reference to the lesser-included offense. Under the circumstances, Rollins was entitled to make his jury argument on the assumption that the lesser-included offense would not be submitted to the jury. Nothing in the ABA Standards compels a contrary conclusion. The ABA Standards do require the trial court to "give additional appropriate instructions in response to the jury's request...." III *Standards for Criminal Justice* 15–4.3 (2d ed. 1980). Yet there would have been nothing inaccurate or legally incorrect in responding to the jury's inquiry by an instruction stating that the jury was not entitled to consider the issue of a lesser-included offense and that it was bound to decide the case solely on the charges originally submitted.

*Id.* at 602–03.

We believe that the same result is appropriate here. Had the trial court permitted the jury to consider the public duty defense, it would have had to have permitted further argument. We are particularly troubled because the performance of public duty defense described in AS 11.81.420 is a defense, AS 11.81.300, rather than an affirmative defense. Consequently, AS 11.-81.900(b)(15), which reads as follows, applies:

(15) "defense," other than an affirmative defense, means that

(A) some evidence must be admitted which places in issue the defense; and

(B) the state then has the burden of disproving the existence of the defense beyond a reasonable doubt[.]

As *Rollins* indicates, it is fundamentally unfair to have the jury consider an issue that did not occur to the parties at the time they were introducing evidence and making their arguments. If the justification defense was to be presented to the jury, it would appear that the trial court would have to reopen the evidence to permit the municipality to directly address the defense. It was not an abuse of discretion to decline to do so after the jury had already retired for its deliberation.[4]

The judgment of the district court is AFFIRMED.

BRYNER, Chief Judge, dissenting.

I dissent. In my view, Gilbreath was entitled to have the jury's question answered with an accurate statement of applicable law. There was ample evidence presented to allow reasonable jurors to conclude that Gilbreath had been specifically directed to drive his car to the side of the road by a police officer who was acting in the course and scope of his duties. Consequently, the jury should have been instructed that Gilbreath could not be convicted for driving pursuant to a direct and lawful order by a police officer.

I fail to see how the failure of Gilbreath's counsel to anticipate an obviously

---

**4.** We are not contending that the prosecution has the burden of proving a defendant's guilt on only those elements of the offense that the defendant affirmatively disputes at trial. We do suggest that the prosecution does not have the burden, initially, of disproving justifications that are not presented in a defendant's opening statement or in a jury instruction properly requested pursuant to Alaska Criminal Rule 30(a). Nor are we convinced that the trial court's response to the jury's question was inaccurate. If the use of the justification defense was not proper in this case, then the trial court was not in error in informing the jury of that fact. But even if there was error, given the defendant's

prior forfeiture of the defense, the error was harmless. There is authority for the proposition that, where a defendant is precluded from claiming a defense because he failed to meet the prerequisites for introducing it into the case, the defendant cannot be prejudiced by a prosecutor's misstatement of law regarding that defense. *People v. Bradley,* 73 Ill.App.3d 347, 29 Ill.Dec. 395, 398, 391 N.E.2d 1078, 1081 (1979). We believe the same rule should apply here. Because Gilbreath had forfeited the right to rely on the justification defense, it necessarily follows that the trial court's perhaps erroneous instruction to the jury regarding the scope of that defense was not prejudicial error.

unexpected jury question could amount to a waiver or forfeiture of Gilbreath's right to a verdict based upon a correct statement of applicable law. It seems to me that the position taken by the majority of the court is tantamount to a holding that the prosecution has the burden of proving a defendant's guilt on only those elements that the defendant affirmatively disputes at trial.