**Thomas McCANN, Pat Daly, David Mittenen, Thomas Mittenen, and Brad Pearce, Appellants,**

v.

**STATE of Alaska, Appellee.**

**Chhoeum CHONG, Appellant,**

v.

**STATE of Alaska, Appellee.**

Nos. A–3626, A–3629.

Court of Appeals of Alaska.

Sept. 27, 1991.

</center>

1987); *United States v. Lomas,* 706 F.2d 886 (9th Cir.1983).

Michael N. White, Preston, Thorgrimson, Shidler, Gates & Ellis, Anchorage, for appellants McCann, Daly, David Mittenen, Thomas Mittenen, and Pearce.

Brian M. Doherty, Gilmore & Feldman, Anchorage, for appellant Chong.

Carmen E. ClarkWeeks, Asst. Dist. Atty., Peter C. Gamache, Dist. Atty., Kodiak, and Charles E. Cole, Juneau, for appellees.

Before BRYNER, C.J., and COATS and MANNHEIMER, JJ.

COATS, Judge.

Thomas McCann, Pat Daly, David Mittenen, Thomas Mittenen, Brad Pearce, and Chhoeum Chong (hereinafter McCann) were each convicted of violating AS 16.05.-722, the strict liability commercial fishing provision, for the possession of undersized crab. *See* 5 Alaska Administrative Code (AAC) 34.065 and 5 AAC 34.820.[1] Superior Court Judge Roy H. Madsen ordered McCann to pay the maximum fine, as well as a forfeiture amount of $23,042. On appeal, McCann contends the forfeiture order is illegal and the maximum fine is excessive. We reverse.

On October 12, 1989, officers of the State Fish and Wildlife Protection Agency boarded the F/V Margaret G. after its arrival at Ursin Seafoods in Kodiak, and measured crabs to determine whether they were at least six and one-half inches wide. Officer Allen Hassan testified that he measured a total of 1,015 crabs from the ship and determined that 145, or 14%, were under the legal size. The officers then dumped the live undersized crabs back into the sea. The officers determined that the total dead loss on the ship was approximately 10,000 pounds.

In sentencing McCann, the court noted both that the percentage of undersized crabs found on his vessel was "high" and that he had exhibited "extreme carelessness" in using a bent measuring stick to measure the crabs. Consequently, in the court's view, McCann's conduct bordered on criminal negligence and McCann qualified as a "most serious type of offender." The court then imposed the maximum fine of $3,000 on each of the crew members and $6,000 on Captain Thomas Mittenen as a

---

**1.** 5 AAC 34.065 provides:
FEMALE AND UNDERSIZE KING CRAB. Male king crab less than minimum size and female king crab may not be taken or possessed. Such king crab which have been taken must be immediately returned unharmed to the sea.

5 AAC 34.820 provides in pertinent part:
SIZE LIMITS. (a) Male red and blue king crab six and one-half inches or greater in width of shell may be taken or possessed.

second offender. The court also ordered a "forfeiture" of 14% of the value of the dead loss, or $7,350. In addition, the court ordered a "forfeiture" of half the value of the undersized crabs which were returned to the sea, or $15,692. The court reached this figure as follows:

> I'd have to agree with [the district attorney] that there's a question ... whether or not red king crab which are not native to the waters here are likely to survive. However, they were returned to the sea and they were not retained, the defendants did not receive compensation for them. So, I think all I can do is arbitrarily arrive at a figure and say that assuming having travelled the distance from Bristol Bay or the Bering Sea to Kodiak and probably in a weakened state, it would be lucky if fifty percent of them survived.

Thus, the court's forfeiture order totalled $23,042.

On appeal, McCann contends the court's forfeiture order contravenes the plain meaning of AS 16.05.722. We agree.

Alaska Statute 16.05.722 provides in part:

> *Strict liability commercial fishing penalties.*
>
> (a) A person who without any culpable mental state violates AS 16.05.440— 16.05.690, or a regulation of the Board of Fisheries or the department governing commercial fishing, is guilty of a violation and upon conviction is punishable by a fine of not more than
>
> > (1) $3,000 for a first conviction; and
> >
> > (2) $6,000 for a second or subsequent conviction.
>
> (b) In addition, the court shall order forfeiture of any fish, *or* its fair market

value, taken or retained as a result of the commission of the violation.

(Emphasis added.)

▆ The provision states that fishers may be sanctioned in two ways for their conduct—fine and forfeiture. In providing for the forfeiture of the fish or its fair market value, it seems clear that the legislature sought to prevent violators from profiting in any way from their illegal catch. Thus, the statute allows the state to seize the illegal catch itself, or, if it has already been sold, the statute allows the state to seize the proceeds or fair market value of the sale.[2]

The court's forfeiture order in this case was improper because the amount does not reflect any profit obtained by McCann from the sale of the illegal catch. In effect, McCann was punished three ways for his violation, in contravention of the plain meaning of the statute. The state fined McCann the maximum amount, seized the undersized crabs, and ordered him to pay $23,042, a percentage of the fair market value of the seized crabs. The state's seizure of the crabs effectively constituted a forfeiture of the undersized crabs. The statute does not provide for an additional "forfeiture" penalty.

The state contends the forfeiture payment was proper because McCann was ordered to pay the fair market value of only those crabs which were either dead or unlikely to survive. In the state's view, the court's order was necessary to compensate for the lost resource and "to make the state whole." The state believes the plain meaning of the statute "ties the defendant's potential monetary loss to the market value of the resource—not his culpability or profit." We disagree.

Nothing in the statute allows for a forfeiture in order to "make the state whole." Again, the clear intent of the forfeiture language in the statute is to prevent the

---

2. We likewise acknowledged prior to AS 16.05.-722's enactment that it would be improper to allow a fisher convicted of a strict liability violation to profit in any way from the illegal catch:

> We also believe that it is clear that the legislature intended to authorize the court to order the forfeiture of any fish or game obtained in

violation of a regulation. *We see no reason to allow a defendant, even if he or she acted without fault, to have a valid claim to fish or game obtained in violation of a regulation.* Constantine v. State, 739 P.2d 188, 190 (Alaska App.1987) (emphasis added).

violator from profiting in any way from the illegal catch. Not having profited from his illegal catch, McCann is not subject to forfeiture of its fair market value.

■ McCann also contends the imposition of the maximum fine was excessive because there is nothing in the record to indicate that he qualifies as a worst offender. McCann points out the evidence established that the taking of undersized crabs resulted from a bent measuring stick, and thus the violation was accidental rather than intentional.

The court found that McCann's case came close to qualifying as a misdemeanor offense (namely AS 16.05.723, negligent violation of fishing regulations) because he exhibited "extreme carelessness" in using a bent measuring stick to measure the crabs. This finding, by itself, justifies the imposition of the maximum sentence. *See*

*Benboe v. State*, 698 P.2d 1230, 1232 (Alaska App.1985) (fact that defendant's conduct would have qualified as greater offense than that to which no contest plea was entered increases seriousness of offense). Moreover, the court's finding that McCann caught a "high percentage" of undersized crabs likewise constitutes sufficient justification for the imposition of the maximum fine.[3]

The forfeiture order is VACATED and the imposition of the maximum fine is AFFIRMED.

---

**3.** Chief Judge Bryner and Judge Mannheimer concur with the result on the sentencing issue.

*See Johnson v. State*, 816 P.2d 220 (Alaska App. 1991).