Krystal R. ALLEN, Appellant,

v.

MUNICIPALITY OF ANCHORAGE,
Appellee.

No. A–9580.

Court of Appeals of Alaska.

Oct. 12, 2007.

Michael B. Logue, Gorton, Logue & Graper, Anchorage, for the Appellant.

Christina Otto, Assistant Municipal Prosecutor, and Frederick H. Boness, Municipal Attorney, Anchorage, for the Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

## OPINION

COATS, Chief Judge.

Krystal R. Allen pleaded no contest to two counts of cruelty to animals. She was sentenced to a 30–day term to serve and was placed on probation for 10 years. One of the conditions of Allen's probation prohibits her from possessing any animals other than her son's dog. Allen argues that the district court abused its discretion by imposing this condition of probation because it will frustrate her rehabilitation.

The Municipality argues that, by statute, this Court has no jurisdiction to hear this appeal because Allen was sentenced to fewer than 120 days to serve. We conclude that we do have jurisdiction to decide Allen's claim. We also conclude that the district court did not abuse its discretion by restricting Allen's possession of animals during the term of her probation. We therefore affirm Allen's sentence.

### Facts and proceedings

On October 6, 2004, the Anchorage Police Department and the Anchorage Animal Care

---

1. Anchorage Municipal Code (AMC) § 8.55.010.-A.2, AMC § 8.55.010.A.3, and AMC § 8.30.080.-

and Control Center responded to complaints of a foul odor coming from Allen's home.

At Allen's sentencing hearing, Lucius Burns, the lead enforcement officer for Animal Control, testified that the home smelled of cat urine to the point where it "literally burnt your throat." There were approximately forty cats in the kitchen, and the floor was covered with debris and animal fecal matter. There were more cats in kennels downstairs—a total of approximately 180 to 200 cats in the home. There were also three dogs, thirteen birds, and three chickens. Burns stated it was "probably the foulest environment I've been in dealing with cats." The majority of the cats were emaciated, had ulcerated injuries on their eyes and upper respiratory infections, and were not socialized to people.

Anchorage Police Officer Jackie Valdez testified that the home was filthy and unsafe for people or animals. There was rotten meat dripping out of a refrigerator. Cats were locked in bedrooms and kennels, and some were even inside the ceiling. There was no clean drinking water and little food.

Dr. Myra Wilson, a veterinarian and manager of Animal Control, testified that, while the three dogs appeared well-fed, the birds did not have food or water and their perches were smeared with feces. When they were given food and water, the birds ate and drank continuously for more than twenty minutes. Many of the birds did not have sufficient muscle mass, and most had an avian herpes virus. Wilson testified that this was the most serious case she had encountered in her five years at Animal Control in terms of the number of animals involved.

Allen was charged with one count of cruelty to animals for abusing an animal, two counts of cruelty to animals for maintaining an animal in an inhumane manner, and one count of tampering with official proceedings.[1] Allen pleaded no contest to the two counts of cruelty to animals for maintaining animals in an inhumane manner, and the Municipality dismissed the other two counts.

A.1, respectively.

During sentencing, Allen emphasized the progress she had made toward rehabilitation. She did not dispute the Municipality's evidence on the condition of the animals and the home. Nor did she dispute that she had a history of cruelty to animals. During the trial, Wilson testified that Animal Control had documented similar conditions in Allen's home in 1990, 1994, 1997, and 1999. And in 1990 and 1995, Allen was convicted of cruelty to children and charged with, but not prosecuted for, cruelty to animals.

Judge Lohff found that "the harm that occurred to the animals [was] horrendous.... They suffered horribly, many of them." He found the case to be a worst offense. And, while he considered Allen's efforts at rehabilitation, he also considered Allen's history of cruelty to animals.

Judge Lohff imposed 360 days with 330 days suspended on the first count of animal cruelty, 360 days with 360 days suspended on the second count, and a 10–year term of probation. He prohibited Allen from having any animal in her care, custody, control, or ownership during her term of probation, other than her son's dog. In discussing this probation condition, Judge Lohff noted the lack of animal control probation supervisors and the practical difficulties of enforcement if Allen were allowed to have animals. Allen appeals the imposition of this probation condition.

*Discussion*

*Why we have jurisdiction over this appeal*

■ The Municipality begins by arguing that we do not have jurisdiction to hear this appeal because Allen was only sentenced to 30 days of unsuspended incarceration. The Municipality argues that, under AS 22.07.020(c), we only have jurisdiction to re-

view misdemeanor sentences that exceed 120 days to serve.

We have previously held that AS 22.07.020(c) does not limit our authority to review a claim that a sentence is illegal, regardless of the length of that sentence.[2] But Allen is not claiming that her sentence is illegal; she claims that the district court abused its discretion under the *Chaney* sentencing criteria by imposing a 10–year probation condition that limits her possession of animals.[3] Her claim is therefore a "sentence appeal" for purposes of AS 22.07.020(c)(2)— an appeal "in which the defendant's sole assertion of error is that the sentencing judge abused his or her discretion by imposing too severe a sentence."[4] We thus must decide whether AS 22.07.020(c)(2) prohibits us from considering *any* sentence appeal by a defendant whose term of imprisonment does not exceed 120 days, or whether the statute only prohibits us from considering sentence appeals that challenge that term of imprisonment as excessive.

■ The supreme court has inherent jurisdiction to review criminal sentences.[5] We, however, are a statutory court and can only consider cases if we have been granted jurisdiction by the legislature.[6]

Our jurisdiction to hear misdemeanor sentence appeals is established by AS 22.07.020(c), which provides:

> The court of appeals has jurisdiction to review ... (2) the final decision of the district court on a sentence imposed by it if the sentence exceeds 120 days of unsuspended incarceration for a misdemeanor offense.

■ This jurisdiction statute incorporates the limitation on sentence appeals codified in

2. *Hillman v. Anchorage,* 941 P.2d 211, 212–13 (Alaska App.1997).

3. *See id.; State v. Chaney,* 477 P.2d 441, 443–44 (Alaska 1970). *See also* AS 12.55.005 (codifying the *Chaney* sentencing criteria).

4. *Rozkydal v. State,* 938 P.2d 1091, 1094 (Alaska App.1997) (discussing the type of sentence appeal authorized by AS 12.55.120); *see also Rich-*

*ardson v. State,* 47 P.3d 660, 663 (Alaska App. 2002) (observing that AS 22.07.020(c) incorporates the limitation on sentence appeals in AS 12.55.120(a)).

5. *Wharton v. State,* 590 P.2d 427, 429 (Alaska 1979); *Gilligan v. State,* 560 P.2d 17, 18 n. 2 (Alaska 1977).

6. *See* AS 22.07.010.

AS 12.55.120(a).[7] That statute grants defendants the right to appeal "[a] sentence of imprisonment exceeding 120 days for a misdemeanor offense ... on the ground that the sentence is excessive."

In *Richardson v. State*,[8] we considered whether AS 12.55.120(a) limits sentence appeals to appeals that challenge the term of imprisonment as excessive.[9] That statute does not mention whether a defendant can appeal other terms of a sentence, such as the amount of a fine, conditions of probation, or license revocation.[10] Accordingly, the State argued in *Richardson* that we only had jurisdiction to consider sentence appeals that challenged the term of imprisonment.[11]

In considering this argument, we recognized that the legislative history of AS 12.55.120 is silent on sentence appeals that involve matters other than terms of imprisonment.[12] But we reasoned that, because defendants often challenge both the length of their prison term and other aspects of their sentence, unnecessary administrative difficulties would result if we decided claims involving terms of imprisonment while the supreme court had discretion to review all other sentencing claims.[13] We therefore held that, in the absence of any affirmative indication that the legislature intended to split jurisdiction in this way, defendants who received unsuspended terms of imprisonment exceeding the statutory level could appeal any aspect of their sentence to this court.[14]

We are now faced with the question of whether we have jurisdiction to consider these types of claims (*i.e.*, claims that do not involve a challenge to the term of imprisonment) when the term of imprisonment does not meet the statutory level.

■ We conclude that we have jurisdiction to review this type of claim. We begin by noting that we have not been consistent on whether we have jurisdiction to consider excessive sentence claims when the term of imprisonment is below the statutory level. In one opinion, *Haggren v. State*,[15] and at least two memorandum opinions, we have held that we did *not* have jurisdiction to consider excessive sentence claims involving fines and forfeitures because the defendants had not received an unsuspended term of imprisonment that exceeded the statutory level.[16] But in other cases we have considered these types of claims.[17] For example, in *Jordan v. State*,[18] we considered Jordan's claim that the forfeiture of his airplane was an excessive sentence even though Jordan

---

7. *Richardson*, 47 P.3d at 663 (citing *Hillman*, 941 P.2d at 215).

8. 47 P.3d 660.

9. *Id.* at 662–64.

10. *Id.* at 663.

11. *Id.* at 661–62.

12. *Id.* at 663.

13. *Id.* at 664.

14. *Id.*

15. 829 P.2d 842 (Alaska App.1992).

16. *Id.* at 845; *Bingaman v. Anchorage*, Alaska App. Memorandum Opinion and Judgment No. 4179 at 2, n. 2 (Feb. 2, 2000), 2000 WL 124801 at *1, n. 2; *Jerrel v. State*, Alaska App. Memorandum Opinion and Judgment No. 2533 at 14 (Nov. 4, 1992), 1992 WL 12153274 at *7.

17. *See, e.g., Jordan v. State*, 681 P.2d 346, 350 (Alaska App.1984) (considering an excessive sentence claim involving the forfeiture of an airplane although Jordan did not receive any unsuspended incarceration); *Perez v. State*, Alaska App. Memorandum Opinion and Judgment No. 2486 at 8 (Aug. 12, 1992), 1992 WL 12153294 at *3 (considering an excessive sentence claim involving a $1000 fine with $500 suspended, 150 hours of community work service, and 180 days with 165 days suspended although Perez only received 15 days of unsuspended incarceration); *Kuznicki v. Anchorage*, Alaska App. Memorandum Opinion and Judgment No. 2191 at 1–4 (April 10, 1991), 1991 WL 11650698 at *1 (considering an excessive sentence claim although Kuznicki was only sentenced to 15 days of unsuspended incarceration); *Kelley v. State*, Alaska App. Memorandum Opinion and Judgment No. 2102 at 6–7 (Oct. 3, 1990), 1990 WL 10509548 at *3 (considering a claim that a fine was excessive although Kelley was not sentenced to any imprisonment); *Andrews v. State*, Alaska App. Memorandum Opinion and Judgment No. 1697 at 1–2 (Nov. 9, 1988), 1988 WL 1513112 at *1 (considering an excessive sentence claim although Andrews was only sentenced to 6 days of unsuspended incarceration).

18. 681 P.2d 346.

had not been sentenced to any term of unsuspended incarceration.[19] In *Kelley v. State*,[20] a memorandum opinion, we considered Kelley's claim that his sentence—a $15,000 fine with $7500 suspended and forfeiture of his $3000 share of the profit from the illegally caught fish—was excessive.[21] (Chief Judge Bryner concurred in the result in *Kelley* but argued that the court did not have jurisdiction to consider the claim.[22]) And in *Mahan v. State*,[23] another animal cruelty case, we addressed the defendant's challenges to her term of probation, the conditions of her probation, and the amount of restitution ordered, even though her 1–year prison term was suspended.[24] We believe that this line of cases is correct and that we have jurisdiction to consider non-term-of-imprisonment sentence appeals (*e.g.*, appeals challenging probation conditions, fines, forfeitures, and license revocations) regardless of the term of imprisonment imposed by the lower court.

When we interpret a statute, we presume "that the legislature intended every word, sentence, or provision of a statute to have some purpose, force, and effect, and that no words or provisions are superfluous."[25] But "[s]trict construction does not require that statutes be given the narrowest meaning allowed by the language; rather, the language should be given a 'reasonable or common sense construction, consonant with the objectives of the legislature.' The intent of the legislature must govern and the policies and purposes of the statute should not be defeated."[26]

As noted above, AS 22.07.020(c) states that this court has jurisdiction over "the final decision of the district court on a sentence imposed by it if the sentence exceeds 120 days of unsuspended incarceration for a misdemeanor offense." And AS 12.55.120(a) grants defendants the right to appeal "[a] sentence of imprisonment exceeding 120 days for a misdemeanor offense . . . on the ground that the sentence is excessive." The plain language of these statutes appears to limit our jurisdiction to challenges to terms of imprisonment that exceed 120 days for a misdemeanor offense.

However, as in *Richardson*, we have not found any legislative discussion of sentence appeals that do not concern terms of imprisonment, either in 1980 when this court was created or in 1995 when the legislature amended AS 12.55.120 and AS 22.07.020 to limit misdemeanor sentence appeals to terms of imprisonment exceeding 120 days.[27] The transmittal letter from the governor for the 1995 legislation did not mention sentence appeals involving claims other than challenges to the term of imprisonment:

> [The sections amending AS 12.55.120 and AS 22.07.020] restrict defendants convicted of misdemeanors from appealing as excessive a sentence of 120 days or less.[28]

The committee discussions were likewise limited to sentence appeals involving terms of imprisonment.[29] We presume the legislature was aware of the inconsistency of our prior decisions when it debated the 1995 amendments, and we do not believe it would have been silent on sentence appeals challenging probation conditions, fines, forfeitures, and license revocation, if it had intended to elimi-

---

19. *Id.* at 350.

20. Alaska App. Memorandum Opinion and Judgment No. 2102, 1990 WL 10509548.

21. *Id.* at 6–7, 1990 WL 10509548 at *3.

22. *Id.* at 8, 1990 WL 10509548 at *3.

23. 51 P.3d 962 (Alaska App.2002).

24. *Id.* at 966–67.

25. *Kodiak Island Borough v. Exxon Corp.*, 991 P.2d 757, 761 (Alaska 1999) (quoting *Rydwell v. Anchorage Sch. Dist.*, 864 P.2d 526, 530–31 (Alaska 1993)).

26. *Mack v. State*, 900 P.2d 1202, 1205 (Alaska App.1995) (quoting *Belarde v. Anchorage*, 634 P.2d 567, 568 (Alaska App.1981)).

27. *See Richardson*, 47 P.3d at 664.

28. *See* February 27, 1995, Transmittal Letter for H.B. 201, 1995 House Journal 490.

29. *See* Committee Minutes, House State Affairs Committee (March 18, 1995), House Judiciary Committee (March 27, 1995), and House Finance Committee (April 12, 1995) (testimony of Lauri Otto, Deputy Attorney General, Criminal Division, Department of Law, on H.B. 201).

nate our jurisdiction over those appeals in all cases involving sentences of 120 days or less.

In the absence of an affirmative indication from the legislature, we do not believe the legislature intended to allow a defendant with a 121–day sentence to appeal a potentially onerous penalty (such as a 20–year revocation of a driver's license) to this court but to limit a defendant with a 120–day sentence to discretionary review by the supreme court on the same claim.[30] And, as we reasoned in *Richardson,* having this court decide a claim that a probation condition is illegal while leaving to the supreme court discretionary review over whether the same probation condition was an abuse of discretion would result in unnecessary administrative difficulties.[31]

■ For this reason, we find that AS 22.07.020(c) grants us jurisdiction over all sentence appeals from a district court except for those that challenge as excessive a term of imprisonment of 120 days or less. Any holding to the contrary is hereby overruled.[32]

*Why we find the court did not abuse its discretion by imposing the probation condition*

■ Allen argues that the court abused its discretion by forbidding her from possessing any animals other than her son's dog during her 10–year term of probation. We review the court's imposition of a probation condition for abuse of discretion.[33]

We have consistently upheld conditions of probation restricting the defendant from engaging in the activity that formed the basis for the underlying conviction.[34] And, although we have not directly resolved a challenge to a probation condition imposing limits on the possession of animals, we have held that it was not facially unreasonable to restrict a defendant who was convicted of cruelty to animals from owning more than one animal and from owning a horse.[35]

Here, the court found that the animals suffered horribly, that this was a worst offense, and that Allen had a history of cruelty to animals. Given these facts, prohibiting Allen from possessing animals during the term of her probation was reasonably related to her rehabilitation and to protecting the public and was not unduly restrictive of her liberty.[36] The district court was therefore justified in imposing the probation condition.

Allen's main complaint is that the court did not mention these factors when it discussed the probation condition. Instead, the court noted the lack of animal control probation supervisors and the "practical realities" of supervising Allen's possession of animals. However, it appears from the record that the court considered rehabilitation, protection of the public, and the reasonableness of restrictions on Allen's liberty along with the practical realities of enforcing the probation condition. The court simply did not repeat these findings when it discussed the probation condition and explained why monitoring Allen's possession of animals was not feasible.

30. *See* Alaska R.App. P. 215(a)(5).

31. *See* 47 P.3d at 664.

32. *See Haggren,* 829 P.2d at 845; *Bingaman,* Alaska App. Memorandum Opinion and Judgment No. 4179 at 2 n. 2, 2000 WL 124801 at *1 n. 2; *Jerrel,* Alaska App. Memorandum Opinion and Judgment No. 2533 at 14, 1992 WL 12153274 at *7.

33. *Parks v. State,* 571 P.2d 1003, 1005 (Alaska 1977); *Sweetin v. State,* 744 P.2d 424, 427 (Alaska App.1987).

34. *See Baum v. State,* 24 P.3d 577, 581 (Alaska App.2001) (affirming probation condition that restricted defendant, who was convicted of unlawfully taking game, from applying for a hunting or guiding license for ten years); *Allain v. State,* 810 P.2d 1019, 1022–23 (Alaska App.1991) (affirming probation condition that restricted defendant, who was convicted of sexual abuse of a minor, from having unsupervised contact with minors under sixteen years of age); *Tiedeman v. State,* 576 P.2d 114, 116 (Alaska 1978) (affirming probation condition that restricted defendant from appearing drunk in public when alcohol was an important contributing factor to his criminal behavior).

35. *Mahan,* 51 P.3d at 966 (claim waived due to inadequate briefing).

36. *See Baum,* 24 P.3d at 582; *Nitz v. State,* 745 P.2d 1379, 1381 (Alaska 1987); *Tiedeman,* 576 P.2d at 116.

We conclude that the court did not abuse its discretion by prohibiting Allen from possessing animals, other than her son's dog, while on probation.

*Conclusion*

Allen's sentence is AFFIRMED.

MANNHEIMER, Judge, dissenting.

Krystal Allen was convicted of cruelty to animals. As a condition of Allen's probation, the district court prohibited her from possessing any animals (other than the dog currently belonging to her son). Allen asks us to overturn this condition of her probation.

As the facts recited in the majority opinion demonstrate, the challenged condition of probation appears to be eminently justified. However, the real question in this case is whether Allen is entitled to ask this Court to review the district court's decision.

For the reasons explained here, I conclude that Allen does not have the right to appeal her sentence to this Court (although she has the right to petition the supreme court for discretionary review of her sentence). I therefore dissent from my colleague's decision to adjudicate the lawfulness of Allen's probation condition.

*An overview of Alaska law governing appellate review of criminal sentences*

Under Alaska law, criminal defendants have an undoubted right to appeal their sentences on the ground that illegality occurred in the sentencing process—*i.e.*, that the sentencing proceedings were irregular, or that the sentencing judge erred when making pertinent factual or legal rulings, or that the sentence itself is illegal. *Hillman v. Anchorage*, 941 P.2d 211, 213, 215 (Alaska App. 1997); *Rozkydal v. State*, 938 P.2d 1091, 1093–94 (Alaska App.1997). However, Alaska law restricts a defendant's right of "sentence appeal"—a technical term that refers to a defendant's right to appeal a *lawfully* imposed sentence on the sole ground that one or more provisions of the sentence constitute an abuse of sentencing discretion. *Rozkydal*, 938 P.2d at 1093–94.

The restrictions on the right of sentence appeal are codified in Alaska's sentence appeal statute, AS 12.55.120. Subsection (a) of this statute is the portion that governs misdemeanor sentence appeals to this Court. The pertinent part of this subsection reads:

(a) A sentence of imprisonment lawfully imposed ... for a term or for aggregate terms ... exceeding 120 days [of unsuspended incarceration] for a misdemeanor offense may be appealed to the court of appeals by the defendant on the ground that the sentence is excessive....

The first step in deciphering this language is to draw a distinction between the right of "appeal" (*i.e.*, the right to demand appellate review) and the right to "petition" (*i.e.*, the right to ask an appellate court to exercise its power of discretionary review).

As this Court explained in *Rozkydal*, 938 P.2d at 1094–95, Alaska's sentence appeal statute places restrictions on a defendant's right to *appeal* a sentence on the sole ground that it is excessive (*i.e.*, that the judge's decision constitutes an abuse of sentencing discretion). However, even when a defendant is barred from appealing a sentence on this ground, a defendant still has the right to raise such a claim in a *petition* for discretionary sentence review.

We reached this conclusion in *Rozkydal* because the sentence appeal statute does not purport to limit a defendant's right to seek discretionary appellate review of a sentence, because Alaska Appellate Rule 215(a) declares that the supreme court has the authority to engage in discretionary review of any sentence that is not appealable, and because, in *State v. Browder*, 486 P.2d 925, 930–31 (Alaska 1971), the supreme court suggested that it has the constitutional authority to review (at the court's discretion) any ruling in any criminal case.

Thus, the truth of the matter is that every defendant in Alaska has the right to seek appellate review of their sentence on the ground that it is excessive. The effect of our sentence appeal statute is not to limit appellate review of sentences, but rather to define the *manner* in which that appellate review is invoked and conducted.

Defendants who are given a right of sentence appeal under AS 12.55.120 can *demand* appellate review of their sentences; that is, the appellate court is obliged to entertain the defendant's sentence appeal and to decide the merits of the appeal. Defendants who are not given the right of sentence appeal under AS 12.55.120 can still *seek* appellate review of their sentences, but they must petition the appellate court to exercise its power of discretionary review—which means that the appellate court can decline the petition without ordering preparation of a record and normal briefing, and without ever deciding the underlying merit of the defendant's claims.

There is one final aspect of the situation that must be mentioned at this point. The Alaska Legislature has given this Court jurisdiction to hear sentence *appeals* brought by criminal defendants, but the legislature has not given this Court jurisdiction to hear sentence *petitions* brought by criminal defendants. Because of this, defendants who have a right of sentence appeal under AS 12.55.120 can bring their appeal to this Court, but all other defendants—that is, the defendants whose remedy is a petition for sentence review—must present their petition to the supreme court. *See Rozkydal,* 938 P.2d at 1098.

*A closer examination of AS 12.55.120(a), the portion of Alaska's sentence appeal statute that governs Allen's case, and this Court's prior decisions interpreting that statute*

I now return to AS 12.55.120(a), the portion of the sentence appeal statute that governs misdemeanor sentence appeals to this Court. This portion of the statute declares:

> A [lawfully imposed] sentence of imprisonment ... exceeding 120 days [of unsuspended incarceration] for a misdemeanor offense may be appealed to the court of appeals ... on the ground that the sentence is excessive[.]

As can be seen, a defendant's right of appeal is restricted by the phrase "a sentence of [unsuspended] imprisonment ... exceeding 120 days". This provision is ambiguous; the statute could potentially mean three different things.

First, the statute might be construed narrowly, by having the phrase "sentence of imprisonment" define the sole aspect of a sentence that can be appealed. In other words, the statute could potentially mean that a misdemeanor defendant can appeal a sentence of imprisonment that exceeds 120 days to serve, but that the defendant has no right to appeal any other aspect of their sentence.

(See AS 22.10.020(f), the related statute that defines the superior court's sentence appeal jurisdiction. The wording of this statute comes closest to embodying this narrow construction of the right of sentence appeal. AS 22.10.020(f) declares: "An appeal may be taken [from the district court] to the superior court on the ground that an unsuspended sentence of imprisonment exceeding 120 days was excessive[,] and the superior court ... has the power to reduce the sentence.")

Second, the phrase "sentence of imprisonment ... exceeding 120 days" might constitute a threshold that triggers the right of sentence appeal. In other words, the statute could potentially mean that a misdemeanor defendant can appeal any aspect of their sentence so long as the imprisonment portion of the sentence exceeds 120 days to serve.

Third, the phrase "sentence of imprisonment ... exceeding 120 days" could conceivably be interpreted as a specific restriction on a defendant's otherwise general right to pursue a sentence appeal. In other words, the statute could potentially mean that a misdemeanor defendant's right to appeal the imprisonment portion of their sentence hinges on whether the defendant received more than 120 days to serve, but that misdemeanor defendants otherwise have an unrestricted right to appeal any other aspect of their sentence.

Fifteen years ago, in *Haggren v. State,* 829 P.2d 842 (Alaska App.1992), we partially resolved this ambiguity by rejecting the third potential interpretation described above. That is, we interpreted AS 12.55.120(d) to mean that defendants who receive less than the specified amount of unsuspended impris-

onment have no right to appeal other aspects of their sentence.

Here is the pertinent portion of our opinion in *Haggren*. (At the time *Haggren* was decided, the threshold amount of time to serve was 45 days rather than the current 120 days.)

> Haggren's final argument on appeal is that his sentence is excessive. [The district court] sentenced Haggren to a fine of $6,000 with $2,700 suspended. [The court] also ordered Haggren to pay a forfeiture of $1,700, representing the fair-market value of the fish Haggren caught while fishing in violation of the regulation. Because Haggren was not sentenced to a term of imprisonment of at least 45 days, he has no right to appeal his sentence. *Johnson v. State*, 816 P.2d 220 (Alaska App.1991).

*Haggren*, 829 P.2d at 845.

Then, five years ago, in *Richardson v. State*, 47 P.3d 660, 663–64 (Alaska App.2002), this Court resolved the remaining statutory ambiguity by adopting the second potential interpretation described above. That is, we held that AS 12.55.120(a) gives misdemeanor defendants the right to appeal any aspect of their sentence, so long as the defendant received more than 120 days of unsuspended incarceration.

*My colleagues' decision to overrule Haggren, and the requirements imposed by the doctrine of stare decisis*

In the present case, my colleagues have decided to overrule the interpretation of AS 12.55.120(a) that this Court adopted in *Haggren*.

As explained above, *Haggren* holds that the statutory phrase "sentence of imprisonment ... exceeding 120 days" constitutes a threshold that triggers a misdemeanor defendant's right of sentence appeal. That is, a misdemeanor defendant has no right to appeal any aspect of their sentence unless the imprisonment portion of their sentence exceeds 120 days to serve.

Allen's brief to this Court does not address this jurisdictional issue. She simply presents her sentence appeal argument and ignores the jurisdictional problem. The Municipali-

ty, on the other hand, raises the jurisdictional issue and expressly relies on *Haggren* for the proposition that Allen has no right to appeal. Allen has made no attempt to respond to the Municipality's argument.

(Because Allen's case was filed as a sentence appeal under Alaska Appellate Rule 215, she had no automatic right to file a reply brief. See Appellate Rule 215(g)(3), which declares that "[n]o reply memorandum shall be filed [in a sentence appeal] unless ordered by the court". However, after the Municipality raised the jurisdictional issue (*i.e.*, a new issue that was dispositive of the appeal), Allen did not seek permission to file a reply brief or any other responsive pleading.)

Despite the fact that Allen has not asked us to overrule *Haggren*, and despite the fact that Allen has not submitted any briefing on this jurisdictional issue, my colleagues have now decided to overrule *Haggren*—to interpret AS 12.55.120(a) as granting misdemeanor defendants an unfettered right to appeal any aspect of their sentence *other* than a term of unsuspended imprisonment, as well as a limited right to appeal a term of unsuspended imprisonment (*i.e.*, if it exceeds 120 days).

In support of their decision, my colleagues offer various arguments as to why the sentence appeal statute could reasonably be interpreted in the manner they now propose. But because this Court has already interpreted this statute, the question of the statute's meaning is governed by the doctrine of *stare decisis*.

As this Court noted in *Erickson v. State*, 950 P.2d 580, 587 (Alaska App.1997), when an issue is governed by *stare decisis*, "it is not enough ... to show that the [prior controlling] decision was honestly debatable at the time, and that it might have gone the other way". Rather, a litigant who asks an appellate court to overrule an existing judicial interpretation of a statute must demonstrate convincing reasons why the existing interpretation "was originally erroneous"—in other words, was never legally justifiable—or why the existing interpretation "is no longer sound because of changed conditions".

In the present case, there is no litigant asking this Court to overrule *Haggren*. Rather, my colleagues have taken this task upon themselves—and without the benefit of briefing.

Nevertheless, the same rule of *stare decisis* applies. It is not enough for my colleagues to show that the statutory interpretation adopted in *Haggren* was reasonably debatable, and that there might be good reasons for adopting a different interpretation of the statute. Rather (since no one is claiming "changed conditions"), my colleagues must demonstrate that *Haggren's* interpretation of the sentencing statute was "originally erroneous"—*i.e.*, never legally justifiable.

For the reasons that follow, I conclude that my colleagues have failed to meet this burden.

*My colleagues' argument that the prior decisions of this Court are inconsistent*

My colleagues note that this Court has been inconsistent in our treatment of misdemeanor sentence appeals. We have issued memorandum decisions in which we rejected defendants' attempts to appeal their sentences when the defendants did not receive the requisite time to serve. On the other hand, we have also issued memorandum decisions in which we allowed defendants to appeal various aspects of their sentences even though the defendants did not receive the requisite time to serve.

One can certainly fault this Court for applying the sentence appeal statute inconsistently. But the issue here is to identify the

real meaning of that statute. Although it is true that this Court has, from time to time, resolved sentence appeals even though the defendant did not receive the requisite amount of unsuspended imprisonment, not one of these memorandum opinions discusses the jurisdictional problem or contains any analysis of this question of statutory interpretation.

Moreover, even though it might be argued that these memorandum decisions *imply* a particular reading of the sentence appeal statute, it is improper for my colleagues to rely on those unpublished cases for any proposition of law. See Court of Appeals Standing Order No. 3 and Alaska Appellate Rule 214(d), as interpreted in *McCoy v. State*, 80 P.3d 751, 752–53 (Alaska App.2002), *opinion on rehearing*, 80 P.3d 757, 764 (Alaska App. 2002)—all of which state that memorandum decisions of this Court do not create legal precedent, and that those decisions do not constitute binding authority for any proposition of law.

My colleagues also point out that there is one published decision, *Jordan v. State*, 681 P.2d 346 (Alaska App.1984), in which this Court decided a defendant's excessiveness challenge to a forfeiture even though the defendant did not receive the threshold amount of imprisonment. But this Court's resolution of the defendant's sentence appeal claim in *Jordan* is found in a few sentences at the end of a lengthy opinion devoted to other issues—and, again, there is no mention (much less a meaningful discussion) of the potential jurisdictional problem. *Id.*, 681 P.2d at 350.[1] It is obvious that the State did not raise a jurisdictional objection to Jor-

---

1. Here is the paragraph:

Dr. Jordan appeals his sentence as excessive. His only real complaint concerns the forfeiture of the airplane. He asserts that it is unclear whether the plane is to be forfeited, or whether the trial court imposed a $10,000 fine which would result in a forfeiture if not paid. Since the maximum fine allowed is $1,000, AS 16.05.900, Jordan contends that the sentence may be illegal. We disagree. Our review of Judge Blair's sentencing remarks and the judgment makes it clear to us that the loss of the airplane was not intended as a fine but as a forfeiture. Judge Blair never referred to a "fine" in his sentencing remarks, only to the fact that the airplane was to be forfeited. Dr. Jordan's sentence is not illegal.

*Cf. F/V American Eagle v. State*, 620 P.2d 657, 671–72 (Alaska 1980), *appeal dismissed*, 454 U.S. 1130, 102 S.Ct. 985, 71 L.Ed.2d 284 (1982). Finally, Dr. Jordan contends that even if legal, the forfeiture of his plane was excessive under the circumstances. The trial court determined that the forfeiture of the airplane was necessary for the purpose of deterring the Jordans and others similarly situated from committing same day airborne violations. We agree. Since the airplane was an instrumentality by which Jordan committed the offense in question, its forfeiture was appropriate under the circumstances. *See* AS 16.05.190. The penalty imposed was not clearly mistaken. *McClain v. State*, 519 P.2d 811, 813–14 (Alaska 1974).

dan's excessive forfeiture claim, and that this Court did not focus on this issue.

In contrast, this Court's decision in *Haggren* (which was issued eight years later) explicitly rests on a ruling that, under AS 12.55.120(a), a defendant has no right to appeal any aspect of their sentence appeal unless the defendant receives the requisite time to serve specified in the statute.

(On two occasions after *Haggren*, this Court issued published decisions in which we reversed aspects of a misdemeanor defendant's sentence even though the defendant did not receive the threshold amount of time to serve: *Ashton v. State*, 737 P.2d 1365, 1366 & n. 1 (Alaska App.1987) (a fine), and *McCann v. State*, 817 P.2d 484, 486 (Alaska App.1991) (a forfeiture). However, in both instances, the defendant claimed that the challenged portion of the sentence was *illegal* because the sentencing court violated a governing statute when imposing the sentence. In other words, these were not "sentence appeals" as defined in *Rozkydal v. State*.)

My colleagues acknowledge that the *Haggren* decision expressly rejects their proposed interpretation of the sentence appeal statute. But they do not truly acknowledge that *Haggren* is a *published* decision of this Court—or, more importantly, that it is the only published decision of this Court that explicitly resolves this issue of statutory interpretation.

Instead, my colleagues simply lump *Haggren* with this Court's other unpublished decisions that are inconsistent with their view of the statute. In other words, my colleagues treat *Haggren* as just one more instance in which this Court refused to decide an excessive sentence claim because the defendant did not receive the requisite amount of time to serve. Then my colleagues conclude that their proposed interpretation of the statute is better supported.

This approach would be lawful if *Haggren* were just another memorandum decision. But it is not. Instead, *Haggren* is binding precedent on this issue of statutory interpretation. Because *Haggren* is a published decision, the doctrine of *stare decisis* restricts this Court's authority to "change its mind"

about what the sentence appeal statute means. It is not sufficient for my colleagues to conclude that their view of the law is better. Instead, they must demonstrate that *Haggren's* interpretation of the law was wrong from the beginning.

*My colleagues' argument that the inconsistency of this Court's decisions is evidence that the Alaska Legislature intended for defendants to have the unfettered right to appeal any non-imprisonment aspect of their sentence*

There is another obstacle to my colleagues' proposed interpretation of the sentence appeal statute. In 1995 (that is, three years after this Court decided *Haggren*), the Alaska Legislature amended both the sentence appeal statute, AS 12.55.120, and the corresponding statutes that define this Court's sentence appeal jurisdiction, AS 22.07.020(b)-(c).

These 1995 amendments were clearly intended to impose further limits on the right of sentence appeal. The legislature increased the threshold amount of imprisonment (*i.e.*, the minimum amount of unsuspended jail time that triggers the right of sentence appeal) from one year to two years for felonies, and from 90 days to 120 days for misdemeanors. *See* SLA 1995, ch. 79, §§ 7-8. In addition, the legislature limited the right of sentence appeal in situations where the defendant's sentence was the result of a negotiated sentencing range or sentencing cap. *Id.* And the legislature made corresponding changes to the statutes that govern this Court's authority to hear sentence appeals: AS 22.07.020(b) (sentence appeals from the superior court) and AS 22.07.020(c) (sentence appeals from the district court). *See* SLA 1995, ch. 79, §§ 11-12.

When a statute has been the subject of judicial interpretation, and when that statute is subsequently re-enacted without alteration of the language that was judicially construed, the prior judicial interpretation is presumed to govern the new version of the statute unless the legislature affirmatively indicates a contrary intention. See the discussion of

this point in *Patterson v. State,* 708 P.2d 712 (Alaska App.1985):[2]

> [I]t is a well-established principle of statutory construction that when the legislature re-enacts language that has previously been judicially construed, [the legislature] is presumed to be aware of the previous construction and to [be using] the language in the sense given it by the court.

*Patterson,* 708 P.2d at 716, citing *Hart v. State,* 702 P.2d 651, 655 (Alaska App.1985). *See also* Norman J. Singer, *Sutherland on Statutes and Statutory Construction* (6th ed., 2000 revision), § 49.09, Vol. 2B, pp. 103–112.

When the Alaska Legislature amended AS 12.55.120(a) in 1995, the legislature did not change the operative language of the statute—*i.e.,* the language that reads, "A sentence of imprisonment lawfully imposed ... for a term or for aggregate terms ... exceeding [so many] days [of unsuspended incarceration] ... may be appealed to the court of appeals ... on the ground that the sentence is excessive".

As explained above, this operative language had already been interpreted-three years before, in *Haggren*—to mean that a defendant whose sentence of unsuspended imprisonment did not exceed the specified amount had no right to appeal any aspect of their sentence. Thus, under the rule of construction explained (and applied) in *Patterson* and *Hart,* the *Haggren* interpretation of AS 12.55.120 is presumed to be the correct interpretation of the post–1995 version of the statute, absent evidence to the contrary.

My colleagues concede that, when the 1995 amendments were making their way through the legislature, there was no pertinent discussion of how the sentence appeal statute applied to defendants who wished to appeal the non-imprisonment aspects of their sentences but who did not receive the required minimum time to serve. Seemingly, under the rule of statutory construction applied in *Patterson* and *Hart,* this silent legislative record should lead to the conclusion that the legislature did not intend to disturb the interpretation of the sentence appeal statute announced in *Haggren.*

But my colleagues interpret the legislature's silence in exactly the opposite fashion. The majority opinion declares:

> We presume [that] the legislature was aware of the inconsistency of [this Court's] prior decisions when it debated the 1995 amendments, and we do not believe [that the legislature] would have been silent on [the issue of a defendant's right to appeal non-imprisonment aspects of a sentence] if [the legislature] had intended to eliminate our jurisdiction over [sentence] appeals in all cases [where defendants received] sentences of 120 days or less.

This reasoning makes no sense.

First, even though the legislature may have been aware that this Court had issued inconsistent decisions on this point, the legislature was presumably also aware (1) that memorandum decisions of this Court do not create legal precedent, and (2) that the only *published* decision addressing this point of law—*Haggren*—expressly interpreted the sentence appeal statute as meaning that defendants did *not* have the right to appeal any aspect of their sentence unless they received the specified minimum time to serve.

Second, even if the legislature believed that, as a result of this Court's inconsistent decisions, the answer to this important question of statutory interpretation was unresolved or in doubt, it is nonsensical to think that the legislature would decide to "resolve" this issue by completely failing to address the issue when they amended the statute in 1995.

The underlying flaw in my colleagues' reasoning is that they begin by assuming something they wish to be true (*i.e.,* that before the 1995 amendments, defendants had an uncontested right to appeal any aspect of a sentence, other than the term of imprisonment), and then they conclude that the legislature's silence on this point during the 1995 revision of the statute constitutes the legislature's implicit affirmation of their wish (*i.e.,* affirmation of this supposed right of appeal).

But defendants did not have an unrestricted right to appeal the non-imprisonment as-

---

**2.** Reversed on other grounds in *State v. Patterson,* 740 P.2d 944 (Alaska 1987).

pects of their sentences under the pre–1995 law. Rather, the controlling interpretation of Alaska's pre–1995 sentence appeal law was the interpretation announced in *Haggren:* defendants had no right to appeal any aspect of their sentence unless they received the requisite amount of time to serve. Thus, to the extent that the legislature's silence constituted an implicit endorsement of any view of the law, that silence was an endorsement of *Haggren.* It makes absolutely no sense to suggest that the legislature remained silent on this issue in the hope that their silence would be taken as signifying their intention to overrule *Haggren.*

Even if we put aside the fact that *Haggren* constituted binding precedent on this issue, the most that could be said about this Court's pre–1995 decisions is that they presented a confusing or ambiguous picture concerning a defendant's right to appeal the non-imprisonment aspects of a sentence. But if that was the case, it makes no sense to construe legislative silence as an implicit endorsement of one view or the other.

*My colleagues have not shown that the decision in Haggren was "originally erroneous"*

If my colleagues desire to overrule *Haggren,* the doctrine of *stare decisis* requires them to demonstrate that the *Haggren* decision was "originally erroneous" or that the *Haggren* decision "is no longer sound because of changed conditions". Since my colleagues make no claim that conditions have changed in any relevant way, they are obliged to show that *Haggren* was "originally erroneous"—*i.e.,* that the *Haggren* decision was not legally justifiable from the beginning.

As already discussed, the sentence appeal statute, AS 12.55.120(a), is worded ambiguously. The statutory reference to an unsuspended term of imprisonment exceeding 120 days could potentially be interpreted in three different ways. In *Haggren,* this Court interpreted this language as setting a threshold for misdemeanor sentence appeals. That is, *Haggren* interpreted the statute to mean

that defendants have no right to appeal any aspect of their sentence unless they receive more than the specified amount of unsuspended imprisonment.

There was no pertinent legislative commentary or history on this question of law at the time *Haggren* was decided. Indeed, even after the 1995 amendments to the sentence appeal law, there still is no pertinent legislative commentary or history. But *Haggren's* interpretation of AS 12.55.120 is supported by the language of AS 22.07.020(c), the counterpart statute that defines this Court's authority to entertain sentence appeals from the district court.

This Court has repeatedly recognized that these two statutes—AS 12.55.120(a), the statute that defines the right of sentence appeal, and AS 22.07.020(d), the statute that defines this Court's jurisdiction to hear sentence appeals—are to be read *in pari materia.* That is, they are to be interpreted in light of each other, and in a manner that renders them harmonious.[3]

The pertinent portion of AS 22.07.020(c) declares:

> The court of appeals has jurisdiction to review ... the final decision of the district court on a sentence imposed by it if the sentence exceeds 120 days of unsuspended incarceration for a misdemeanor offense.

This statute does not contain the ambiguous wording found in AS 12.55.120. That is, AS 22.07.020(c) does not refer to this Court's authority to review "a sentence of imprisonment" imposed by the district court. Rather, AS 22.07.020(c) speaks of—and defines—this Court's authority to review *any* "final decision of the district court on a sentence imposed by [that court]".

In this statute, the legislature has given this Court the authority to review a "final [sentencing] decision" of the district court only "if the sentence exceeds 120 days of unsuspended incarceration". This wording is completely consistent with, and indeed supports, *Haggren's* interpretation of the sentence appeal statute: a defendant has no

---

**3.** *See Richardson v. State,* 47 P.3d 660, 662–63 (Alaska App.2002); *Peters v. State,* 943 P.2d 418, 420 (Alaska App.1997); *Hillman v. Anchorage,* 941 P.2d 211, 212–13 (Alaska App.1997).

right to appeal any aspect of a misdemeanor sentence, and this Court has no right to review any aspect of a misdemeanor sentence, unless the sentence includes a term of imprisonment exceeding 120 days to serve.

In other words, an examination of AS 22.07.020(c) shows that the *Haggren* decision was eminently justifiable at the time. (And my colleagues have not demonstrated, or even suggested, any change of circumstances that would render the *Haggren* decision no longer correct.)

In addition to the fact that the sentence appeal statute, AS 12.55.120, and this Court's jurisdictional statute, AS 22.07.020(c), must be read *in pari materia,* this Court has also held that Alaska Appellate Rule 215(a)—the rule governing sentence appeals and sentence petitions—must likewise be read *in pari materia* with these two statutes.

As we explained in *Peters v. State,* 943 P.2d 418 (Alaska App.1997), the legislative history of Appellate Rule 215(a) demonstrates that the supreme court amended this rule in 1996 to bring it into conformity with the legislature's 1995 amendments to the sentence appeal statute and this Court's jurisdictional statute:

> Just as AS 22.07.020 and [AS] 12.55.120 should be read together and interpreted harmoniously, Appellate Rule 215(a)(1) should also be interpreted so as to be consistent with these statutes. Although Appellate Rule 215(a) has a history of inconsistency with the statutory limits on sentence appeals, the supreme court appears to have designed the current version of Rule 215(a)(1) to conform to the legislature's 1995 amendments to AS 12.55.120 and AS 22.07.020. The statutory amendments were enacted in 1995, taking effect July 1, 1995. The supreme court issued [Supreme Court Order No.] 1226 amending Appellate Rule 215 in January of 1996. With this amendment[,] the court abandoned the 45–day sentence appeal limit to which it had adhered since 1976, and adopted limits on the defendant's sentence appeal of right that correspond exactly to the newly enacted limits on the court of appeals' sentence appeal jurisdiction. Any ambiguity in Appellate Rule 215(a)(1) as amended should therefore be interpreted in favor of harmony with the new AS 12.55.120 and the new AS 22.07.020.

*Peters,* 943 P.2d at 420. Thus, we held, Appellate Rule 215(a) must be read *in pari materia* with AS 12.55.120 and AS 22.07.020(b)-(c).

Appellate Rule 215(a)(1), which is titled "[A] Defendant's Right to Appeal [a] Sentence as Excessive", tracks the language of the sentence appeal statute, AS 12.55.120(a), as amended by the legislature the preceding year (1995):

> A defendant may appeal an unsuspended sentence of imprisonment that exceeds two years for a felony offense or 120 days for a misdemeanor offense on the ground that the sentence is excessive, unless the sentence was imposed in accordance with a plea agreement that provided for imposition of a specific sentence or a sentence equal to or less than a specified maximum sentence. If a sentence is imposed in accordance with a plea agreement that provides for a minimum sentence, a defendant may appeal as excessive only the part of the sentence that exceeds the minimum sentence by more than two years for a felony offense or 120 days for a misdemeanor offense.

Because this appellate rule is worded so as to mirror the provisions of AS 12.55.120(a), the rule presumably was intended to mean the same thing as the statute. That is, in the absence of evidence to the contrary, we must assume that Appellate Rule 215(a)(1) was intended to describe the same right of appeal that is described in the sentence appeal statute. And in early 1996, when the supreme court promulgated this rule, the governing interpretation of a defendant's right of sentence appeal under AS 12.55.120 was the interpretation adopted by this Court in *Haggren.*

Subsection (2) of Rule 215(a), which is titled "[A] Defendant's Right to Appeal [a] Sentence on Grounds Other Than Excessiveness", codifies our holding in *Rozkydal* concerning the types of sentencing issues that can be raised on appeal notwithstanding the legislature's restrictions on "sentence ap-

peals". This subsection of Rule 215(a) states:

A defendant may appeal a sentence of any length on grounds other than excessiveness, including but not limited to: illegality of the sentence; erroneous findings by the trial court that affect the statutory range of sentences to which the defendant is subject; and procedural errors in the sentencing proceeding.

The supreme court's historical file on Appellate Rule 215(a) shows that this language was added to the rule in response to a letter that Justice Warren Matthews sent to the Court Rules Attorney. In his letter, Justice Matthews noted this Court's recent decision in *Rozkydal,* and he expressed concern that Rule 215 did not adequately clarify the fact that the legislature's restrictions on sentence appeals did not limit a defendant's right to file an appeal raising statutory or procedural objections to a sentencing decision. The minutes of the supreme court's Appellate Rules Committee indicate that, in response to Justice Matthews's concerns, a committee member (Assistant Attorney General Eric Johnson) drafted the language that currently appears in Rule 215(a)(2).

Thus, subsection (2) of Appellate Rule 215(a) was intended to confirm this Court's jurisdiction to hear appeals that raise claims of legal or procedural error at sentencing (as opposed to claims that the lower court abused its sentencing discretion).

Finally, subsection (5) of Appellate Rule 215(a) addresses a defendant's right to petition the supreme court to review a sentence that is not appealable to this Court under subsection (1) of the rule. Appellate Rule 215(a)(5) states:

(5) *Right to Seek Discretionary Review for Excessiveness.* A defendant may seek discretionary review of an unsuspended sentence of imprisonment which is not appealable under subparagraph (a)(1) [of this rule] by filing a petition for review in the supreme court under Appellate Rule 402....

As can be seen, subsection (5) speaks of "unsuspended sentence[s] of imprisonment"—the same ambiguous language that is

found in the sentence appeal statute, AS 12.55.120(a). And in *Haggren,* a decision issued almost four years before the supreme court enacted the current version of Appellate Rule 215(a), this Court gave a binding interpretation to that ambiguous language.

As explained above, when statutory language has been judicially construed, the legislature is presumed to act with awareness of that judicial interpretation when it amends or re-enacts the statute. And when the supreme court engages in its legislative role under Article IV, Section 15 of our constitution (that is, when the supreme court enacts court rules), the supreme court is likewise presumed to act with awareness that particular statutory language has been judicially construed—and the court is presumed to use that language in conformity with the prior judicial interpretation, absent evidence to the contrary.

Here, there is no evidence to the contrary. During our efforts to research the meaning of Appellate Rule 215(a), we examined the pertinent legislative history file kept by the Court Rules Attorney. The records pertaining to Appellate Rule 215(a) contain no mention of the issue presented in this case—*i.e.,* the possibility that a defendant who received less than the threshold amount of imprisonment might wish to appeal an aspect of their sentence other than the term of incarceration (*e.g.,* a condition of probation, or the term of a license revocation, or the amount of a fine or forfeiture). Moreover, the supreme court's records contain no discussion of this Court's decision in *Haggren*—much less any indication that the supreme court disagreed with, or wished to overturn, the *Haggren* decision.

To sum up this discussion of Appellate Rule 215(a): No provision of this rule addresses the issue of whether a defendant who receives less than the threshold amount of time to serve can nevertheless appeal a condition of probation, the term of a license revocation, or the amount of a fine or forfeiture. The supreme court's historical file on Appellate Rule 215(a) contains no mention of these types of appeals.

As I noted above, this Court held in *Peters* that Appellate Rule 215(a) is to be read *in*

*pari materia* with the sentence appeal statute and this Court's jurisdictional statute. Accordingly, the supreme court's silence on the jurisdictional issue presented in this appeal means that Appellate Rule 215(a) must be interpreted in conformity with the construction that we gave to the sentence appeal statute in *Haggren.*

In other words, the fact that the supreme court's file contains no discussion of this issue must be taken to mean that the supreme court did not intend to overrule this Court's decision in *Haggren.* The supreme court did not intend Appellate Rule 215(a) to authorize independent challenges to the severity of probation conditions, license revocations, fines, or forfeitures—because the court viewed these types of challenges as excessive sentence claims that were barred unless the defendant received the threshold amount of imprisonment.

### My colleagues' argument that allowing a broader scope of sentence appeals is good policy

My colleagues' final argument is that it is better policy to give defendants the unrestricted right to appeal all non-imprisonment aspects of their sentence, even when the defendant may have received little or no imprisonment. Here is what the majority opinion says:

> In the absence of an affirmative indication from the legislature, we do not believe [that] the legislature intended to allow a defendant ... to appeal a potentially onerous [probation condition or] a 20–year revocation of [their] driver's license [if they received 121 days to serve,] but to limit a defendant [who receives] a 120–day sentence to discretionary review by the supreme court [of] the same claim[s].... [H]aving this court decide a claim that a probation condition is illegal[,] while leaving to the supreme court discretionary review over whether the same probation condition was an abuse of discretion[,] would result in unnecessary administrative difficulties.

Again, there are several flaws in this reasoning.

First, this Court is not empowered to interpret the sentence appeal statute in any manner we wish "in the absence of an affirmative [contrary] indication from the legislature". Instead, our decision in *Haggren* provides the starting point for interpreting this statute, and the legislature's subsequent silence on this point is presumed to be an acquiescence in the *Haggren* decision. Thus, it is my colleagues who need "an affirmative indication from the legislature" before they can depart from *Haggren.*

Second, whenever a dividing line is erected between defendants who have the right to appeal their sentences and defendants who must petition for review of their sentences, there will inevitably be some cases in the latter group that call out for appellate review. That is, there will be defendants who receive 120 days or less to serve (in other words, not enough time to serve to trigger the right of appeal), but whose fines or conditions of probation or license revocations will nevertheless be clearly unreasonable.

But this does not mean that the dividing line created by the legislature is untenable, or that it should not be enforced. As this Court explained in *Rozkydal,*

> The premise underlying any sentence appeal dividing line (whether that line is drawn at 45 days or at 2 years) is that lesser sentences are less likely to be excessive. If lesser sentences are less likely to constitute an abuse of discretion, then there is arguably less justification for conducting a full appellate review of each of these sentences. The legislative history of AS 12.55.120 shows that the legislature relied on this reasoning when it restricted ... sentence appeals[.]

*Rozkydal,* 938 P.2d at 1096.

In other words, even though my colleagues may believe that it creates "unnecessary administrative difficulties" to require some defendants to petition for appellate review of the amount of their fines or the conditions of their probation or the length of their license revocations, the legislature could—and did—reasonably view the matter differently.

The legislature could reasonably infer that, in the average case, if a defendant receives

relatively little time to serve (2 years or less for a felony, or 120 days or less for a misdemeanor), there is a correspondingly smaller chance that the sentencing judge will have abused his or her discretion when setting the amount of the defendant's fine or forfeiture, or the conditions of the defendant's probation, or the length of the defendant's license revocation. Accordingly, the legislature could properly conclude that it would be an unnecessary expenditure of judicial resources to give all of these defendants the right to demand full appellate review of their sentences—and that it makes more sense to require these defendants to petition for review, thus allowing the appellate court to choose which sentencing cases merit full appellate review.[4]

And, in the final analysis, this is the legislature's decision. The legislature is the branch of government that decides which defendants are entitled to file sentence appeals in this Court, and which defendants must petition for appellate review of their sentences. The legislature's decision remains binding, regardless of whether the members of this Court believe that the legislature might have made a better decision.

*Conclusion*

This case involves a defendant who received only 30 days to serve but who claims that one of the conditions of her probation is unreasonable. Under AS 12.55.120(a), as interpreted by this Court in *Haggren*, the defendant has no right to pursue this sentence appeal.

My colleagues have decided to overrule *Haggren*. They take this step even though the defendant does not ask us to do this, and even though neither party has briefed the question of whether *Haggren's* interpretation of the sentence appeal statute is correct.

To reach their desired result, my colleagues have ignored the doctrine of *stare decisis*—the rules that govern a court's authority to overrule its prior decisions. My colleagues have also ignored the rule of statutory construction that applies to statutes and court rules which incorporate language that has already been judicially construed.

My colleagues may believe that *Haggren* was wrongly decided. But they are not writing on a clean slate. There are rules that limit an appellate court's authority to overrule its prior decisions. There are also rules that limit an appellate court's authority to adopt a new and different interpretation of a statute that the court has previously construed. Those rules exist for a reason. The legal community, and the community at large, must have some guarantee that the law will not change merely because the membership of this Court has changed.

For these reasons, I dissent.

---

4. See the remarks of Deputy Attorney General Laurie Otto to the House Judiciary Committee in March 1995, when the legislature was considering the statutory amendments that raised the threshold amount of time to serve from 1 year to 2 years for felonies, and from 90 days to 120 days for misdemeanors:

"People are [currently] able to file sentence appeals as a matter of right ... if [they] have been given a sentence in excess of [one] year for a felony or 90 days for a misdemeanor[.] [If you meet this threshold amount of imprisonment], that is your right. There is no screening. You can file an appeal, and the court has to hear it.

We are upping those limits to two years for a felony and 120 days for a misdemeanor. We have ... looked at Court System statistics, and we see that only a very small percentage of

sentence appeals are granted—that 90 percent of sentences are affirmed. [When felony defendants receive two years or less to serve,] the courts pretty routinely reject [their] sentence appeals. So we tried to [identify] the bulk of sentence appeals [which] were routinely being denied by the courts.

Part of the theory here is to allow the agencies involved—the courts, the prosecutors, the public defenders and the Office of Public Advocacy—to focus on the cases where there is a likelihood of [the defendant's] prevailing, as opposed to the cases where [challenges to sentences] are routinely being denied, and [where] we are all just churning up resources."

*See* Minutes of the House Judiciary Committee for March 27, 1995, Tape 95–36, Side A, between log numbers 400 and 730.